IN RE INTEREST OF ANTONIO S. AND PRISCILLA S.,
CHILDREN UNDER 18 YEARS OF AGE.
RICHARD CALKINS, GUARDIAN AD LITEM, ON BEHALF OF
ANTONIO S. AND PRISCILLA S., APPELLANTS, AND MARLIN M.
AND SHARON M., APPELLEES, V. NEBRASKA DEPARTMENT
OF HEALTH AND HUMAN SERVICES ET AL., APPELLEES.

708 N.W.2d 614

Filed December 23, 2005.    No. S-05-262.

Richard Calkins, guardian ad litem, for appellants.

John C. Person for appellee Ellis S.

Monika E. Anderson, Special Assistant Attorney General, for appellee Nebraska Department of Health and Human Services.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

The issue presented in this appeal is whether a change in guardianship under the Nebraska Juvenile Code necessarily results in a change in custody. We conclude that it does.

## FACTS

Priscilla S. was born December 29, 1989, and Antonio S. was born October 8, 1991. In 2002, they were adjudicated by the county court for Wayne County, sitting as a juvenile court, as children described by Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002) due to abuse by their biological father. The court placed the children in the custody of the Nebraska Department of Health and Human Services (DHHS). DHHS placed the children in foster care, and eventually, the foster parents were made guardians of the children. However, this guardianship was dissolved in 2003 and the temporary care, custody, and control of the children were returned to DHHS by the court.

The case was subsequently transferred to the county court for Franklin County, sitting as a juvenile court. In April 2004, the children were placed in a foster home with Marlin M. and Sharon M. in Franklin, Nebraska. On November 1, Marlin and Sharon filed a petition with the county court for Franklin County, sitting as a juvenile court, requesting that they be appointed legal guardians for Priscilla and Antonio. Their request was consistent with the case plan formulated by DHHS, which recommended guardianship for the children as the permanency objective. At a December 20 hearing, the court adopted the case plan and concluded that the "permanency goal" was guardianship. The guardian ad litem did not object to the case plan. However, he did question whether the guardianship would affect the children's future eligibility for the State of Nebraska's former ward program which provides educational and insurance benefits to former state wards. Because of this issue, the hearing was continued until January 24, 2005.

Prior to the rescheduled hearing, Marlin and Sharon filed an amended petition in which they requested that they be appointed guardians of Priscilla and Antonio, but that DHHS "retain custody" of the children while "care" of the children was placed with Marlin and Sharon by the establishment of the guardianship. Marlin and Sharon requested that DHHS be "relieved of the obligation to supervise" the children and requested that the guardian ad litem be required to file a report at review hearings as to the placement and progress of the children. The petition also alleged that it was in the children's best interests to qualify

for the State's former ward program. On January 3, 2005, DHHS filed an application for change of custody and establishment of guardianship, requesting that Marlin and Sharon be appointed guardians of the children and that DHHS "be relieved of all supervisory, custodial and case management obligations in this matter."

A hearing on Marlin and Sharon's amended petition and the application filed by DHHS was held on January 24, 2005. Marlin and Sharon both testified that they were willing to accept guardianship of the children. Subsidized guardianship agreements entered into between DHHS and Marlin and Sharon were offered and received into evidence. Marlin testified that although both children had aspirations of postsecondary education, he and Sharon would be financially unable to aid the children in obtaining those goals. Marlin further testified that Priscilla in particular was very interested in "the thought of having an actual mom and dad" and that this achievement would be "very important for her mentality and self-being." The children's caseworker testified that Priscilla wanted "a permanent place so she doesn't have to worry about movin' and she has a mom and dad." The caseworker testified that even if the guardianship would affect the children's eligibility for former ward benefits, establishment of the guardianship was still in their best interests. In the guardian ad litem's report offered at the hearing, he disagreed. He opined that it would be in the best interests of the children to remain qualified for the former ward program, noting that "[u]nless the guardianship can be approved and still provide the benefits of the former ward program the Guardian Ad Litem cannot recommend a guardianship." He requested that care be with Marlin and Sharon, while custody of the children remain with DHHS.

On February 14, 2005, the court issued an order finding that it was in the best interests of the children to establish a guardianship with Marlin and Sharon. The court determined that it had no authority to order that the guardianship conferred only care on Marlin and Sharon, leaving the children in the custody of DHHS. It noted, however, that if care and custody could be separated, it would be in the best interests of the minor children for care to remain with Marlin and Sharon and custody to remain

with DHHS, so that the children would remain eligible for former ward benefits. The court ultimately granted DHHS' application and appointed Marlin and Sharon as guardians of Priscilla and Antonio, placing the children in their care and custody.

The guardian ad litem filed this timely appeal, which we removed to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). The biological father of the children filed a brief agreeing with the position of the guardian ad litem. The biological mother has made no appearance in this proceeding.

## ASSIGNMENT OF ERROR

The guardian ad litem assigns, restated and consolidated, that the juvenile court erred in finding that care and custody could not be split between DHHS and Marlin and Sharon for purposes of qualifying the minor children for former ward status.

## STANDARD OF REVIEW

■ Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below. *In re Interest of Jeremy T.,* 257 Neb. 736, 600 N.W.2d 747 (1999).

## ANALYSIS

Under DHHS' former ward program, it offers financial assistance to eligible persons "to continue their education in preparing for gainful employment." In order to qualify for the program, a person must be single, be between the ages of 18 and 20, and "[b]e a former court ward of the Department or ward through relinquishment who was in out-of-home care (for example, foster home, group home, independent living) at the time of her/his discharge." Subject to certain exceptions, the youth "has to enter the Former Ward Program before discharge from the Department." Thus, a ward discharged from the custody of DHHS prior to the age of 18 would be ineligible for benefits under the former ward program. It is undisputed that it would be in the best interests of Priscilla and Antonio to preserve their eligibility under the program. Advocating for the children, the guardian ad litem urges that we recognize a form

of guardianship under which Marlin and Sharon would have care of the children but DHHS would retain custody for the specific purpose of preserving the children's eligibility to participate in the former ward program when they each reach the age of 18. We agree with DHHS that the law does not permit such an arrangement.

As a result of the adjudication of the children under § 43-247, a change of custody occurred. The children were taken from the custody of their biological parents and committed by the court to the temporary care and custody of DHHS, as authorized by Neb. Rev. Stat. § 43-284(6) (Reissue 2004). As a result of this committal, DHHS became the legal guardian of the children, and they became wards of DHHS. See Neb. Rev. Stat. §§ 43-285(1) and 43-905(1) (Reissue 2004). In its role as the guardian having custody of the children, DHHS had "authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures" on behalf of each child. § 43-285(1). DHHS was responsible for the costs of placing and caring for the children. See *In re Interest of Jeremy T., supra.* Acting pursuant to this authority, DHHS placed the children in the foster care of Marlin and Sharon but retained legal custody. Under the Nebraska Juvenile Code, the juvenile court retained jurisdiction and had the "power to order a change in the custody or care" of the children if shown to be in their best interests. Neb. Rev. Stat. § 43-295 (Reissue 2004).

In addition to providing for the temporary well-being of adjudicated children, the Nebraska Juvenile Code shall be construed "[t]o promote adoption, guardianship, or other permanent arrangements for children in the custody of the Department of Health and Human Services who are unable to return home." Neb. Rev. Stat. § 43-246(6) (Reissue 2004). Thus,

> [e]ach child in foster care under the supervision of the state shall have a permanency hearing by a court, no later than twelve months after the date the child enters foster care and annually thereafter during the continuation of foster care. The court's order shall include a finding regarding the appropriateness of the permanency plan determined for the child and shall include whether, and if applicable when, the child will be:

(a) Returned to the parent;

(b) Referred to the state for filing of a petition for termination of parental rights;

(c) Placed for adoption;

(d) Referred for guardianship; or

(e) In cases where the state agency has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, (i) referred for termination of parental rights, (ii) placed for adoption with a fit and willing relative, or (iii) placed with a guardian.

Neb. Rev. Stat. § 43-1312(3) (Reissue 2004). Reading the various provisions of the Nebraska Juvenile Code so that they are consistent, harmonious, and sensible, it is clear that the appointment of DHHS as guardian is intended as a temporary arrangement which, insofar as possible, will be replaced by a permanent resolution, such as returning the child to his or her biological parent(s), termination of parental rights and adoption, or a new guardianship. See *In re Interest of Jeremy T.*, 257 Neb. 736, 600 N.W.2d 747 (1999). Each of these permanent objectives necessarily involves a change of custody.

In this case, the acknowledged permanency goal was for the foster parents to become the guardians of Priscilla and Antonio. Generally, custody of a minor ward is an incident of guardianship. See 39 Am. Jur. 2d *Guardian and Ward* §§ 9 and 97 (1999). A parent's natural right to the custody of his or her child is limited by the State's power to protect the health and safety of the children. *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). "The best interests of the children must always be considered in determining matters of child custody, and where the parent is shown to be unfit or to have forfeited his superior right to custody, the court may place the children in the *custody* of an unrelated third party." (Emphasis supplied.) *Id.* at 982, 554 N.W.2d at 149. We have referred to such an arrangement under the Nebraska Juvenile Code as a "permanent guardianship." *Id.* at 985, 554 N.W.2d at 150. Although such a guardianship does not achieve a degree of permanency equivalent to parenthood or adoption, it creates greater rights than foster parenthood and "more closely approximates a

natural parent-child relationship." *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 693, 617 N.W.2d 824, 836 (2000). See, also, *In re Interest of Amber G. et al., supra.*

DHHS regulations and the federal regulations on which they are largely based indicate that a permanent guardianship is intended to transfer significant rights and duties, including the right of custody, to the guardian. DHHS guidelines recommend that legal guardianship will be supported as a permanency goal when, inter alia, the guardian and the child can function effectively without supervision by DHHS. 390 Neb. Admin. Code, ch. 6, § 004(4) (1998). DHHS regulations also provide: "Upon approval of the court of the guardianship, the worker will close the case. Once the court order establishes guardianship, the Department no longer has any authority or responsibility for the child except as might exist due to a subsidized guardianship." 390 Neb. Admin. Code, ch. 6, § 004.03 (1998). According to federal regulations, "legal guardianship" is a legitimate permanency goal defined as

> a judicially-created relationship between child and caretaker which is intended to be permanent and self-sustaining as evidenced by the transfer to the caretaker of the following parental rights with respect to the child: protection, education, care and control of the person, *custody* of the person, and decision-making. The term *legal guardian* means the caretaker in such a relationship.

(Emphasis supplied.) 45 C.F.R. § 1355.20(a) at 265 (2004).

This case involves a subsidized guardianship in which DHHS agrees to make payments to the guardians to meet the needs of the children. This arrangement is authorized by Neb. Rev. Stat. § 43-284.02 (Reissue 2004), which provides in part: "The Department of Health and Human Services may make payments as needed on behalf of a child who has been a ward of the department after the appointment of a guardian for the child." This statutory language contemplates a succession of custody from DHHS to the new guardians. The subsidized guardianship agreements executed by Marlin and Sharon and a representative of DHHS specifically provide for termination "[i]f the child is no longer in the custody of the guardian(s)."

■ The guardian ad litem correctly argues that a guardianship under the Nebraska Juvenile Code is subject to the continuing jurisdiction of the juvenile court which retains the power to terminate the guardianship. Nevertheless, as noted previously, guardianship is specifically designated by law as a means of providing permanency where other means, such as adoption, are not feasible. §§ 43-246(6) and 43-1312(3). We therefore conclude that where a guardianship is established under the Nebraska Juvenile Code as a means of providing permanency for adjudicated children who have been in the temporary custody of DHHS, custody is necessarily transferred from DHHS to the appointed guardian(s) by operation of law.

### CONCLUSION

For the reasons discussed, we conclude that the county court for Franklin County, sitting as a juvenile court, did not err in ordering that Marlin and Sharon, as duly appointed guardians, shall have the care and custody of Priscilla and Antonio and in further ordering that DHHS should be relieved of custody, case management, and supervision of the children. We affirm.

AFFIRMED.

MILLER-LERMAN, J., participating on briefs.