In re Interest of Brianna B., a child
under 18 years of age.
State of Nebraska, appellee, v.
May Lynn L., appellant.

In re Interest of Mariella B., a child
under 18 years of age.
State of Nebraska, appellee, v.
May Lynn L., appellant.

___ N.W.2d ___

Filed January 14, 2014.    Nos. A-13-054, A-13-055.

1. **Juvenile Courts: Jurisdiction: Minors.** Under the juvenile code, once a minor is adjudged to be within the definition of Neb. Rev. Stat. § 43-247(3) (Reissue 2008), the juvenile court acquires exclusive jurisdiction over the juvenile and the parent who has custody of the juvenile.

2. ____: ____: ____. Neb. Rev. Stat. § 43-285(3) (Supp. 2011) authorizes a juvenile court to establish guardianships for juveniles in the custody of the Nebraska Department of Health and Human Services without resorting to a proceeding under the probate code.

3. **Juvenile Courts: Jurisdiction: Statutes.** As a statutorily created tribunal, a juvenile court has only such authority as has been conferred on it by statute.

4. **Juvenile Courts: Minors.** The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests.

5. ____: ____. The juvenile code must be construed to ensure the rights of all juveniles to care and protection.

6. **Juvenile Courts: Child Custody.** Juvenile courts are accorded broad discretion in their determination of the placement of children adjudicated abused or neglected and to serve the best interests of the children involved.

7. **Juvenile Courts: Jurisdiction: Parental Rights: Visitation.** The continuing jurisdiction of the juvenile court allows the court to order supervised visitation after terminating a mother's parental rights when the order is in the best interests of the children.

8. **Juvenile Courts: Child Custody: Jurisdiction.** The juvenile court has the authority to devise unique foster care situations not set out in the checklist of statutory options when a unique arrangement will be in the best interests of the child.

9. **Juvenile Courts: Jurisdiction: Guardians and Conservators.** The juvenile court retains jurisdiction over a juvenile in a guardianship.

10. **Guardians and Conservators: Parent and Child: Adoption.** A guardianship does not achieve the same degree of permanency as parenthood or adoption.

11. **Juvenile Courts: Guardians and Conservators: Parental Rights.** When a guardianship is established, a parent retains the right to petition the court for restoration of custody and full parental rights in the event of a change in the

circumstances which justified the guardianship and supported the finding of the parent's unfitness.

12. **Juvenile Courts: Jurisdiction: Guardians and Conservators: Visitation.** The juvenile court maintains the authority to create visitation arrangements within the context of a guardianship, so long as those arrangements are in the best interests of the juvenile.

Appeals from the County Court for Lincoln County: MICHAEL E. PICCOLO, Judge. Affirmed in part, and in part reversed and remanded with directions.

Felicia K. Fair, of Fair Law Office, P.C., L.L.O., for appellant.

Eric M. Stott, Special Assistant Attorney General, Tanya Roberts-Connick, Chief Deputy Lincoln County Attorney, and Jay B. Judds, of Nebraska Department of Health and Human Services, for appellee.

Amanda M. Speichert, Lincoln County Public Defender, guardian ad litem.

INBODY, Chief Judge, and RIEDMANN, Judge.

RIEDMANN, Judge.

## I. INTRODUCTION

These cases involve the establishment of guardianships for Mariella B. and Brianna B., two juveniles who were placed in the custody of the Nebraska Department of Health and Human Services (DHHS) after coming within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). On appeal, their biological mother, May Lynn L., argues that the letters of guardianship were issued improperly and that the trial court erred in determining it lacked authority to award her visitation rights. We determine that the letters of guardianship were issued properly, but that the trial court erred in determining it did not have authority to award visitation. Accordingly, we affirm the establishment of the guardianships, but reverse in part, and remand to the juvenile court for a determination of May Lynn's visitation rights.

## II. BACKGROUND

Mariella and Brianna were removed from May Lynn's care in February 2008. At the placement hearing in May, the court appointed a guardian ad litem for May Lynn based upon her diminished intellectual abilities. In July, May Lynn pled no contest to the charge that the girls were within the meaning of § 43-247(3)(a). Accepting her plea, the court granted custody of the girls to DHHS and placed them in foster care. Initially, DHHS sought to reunify May Lynn and the girls. In a May 2009 case plan, DHHS recommended reunification as the primary plan, concurrent with permanency through an alternative plan of guardianship. In October 2009, DHHS recommended changing the goal of the case plan from reunification to guardianship after determining that May Lynn had made no progress toward reunification. DHHS noted that May Lynn consistently demonstrated an eagerness and desire to parent her daughters, but also demonstrated she could not provide for their health and safety needs. Mariella has Down syndrome, and Brianna suffers from attention deficit hyperactivity disorder. All parties agreed that guardianship was a better option than termination of parental rights.

Because many of the potential guardianship placements were disrupted, the girls lingered in foster care for several years while DHHS worked to establish guardianships. During this time, May Lynn continually objected to the case plans, asked for increased visitation, and requested physical custody. In June 2010, DHHS first identified a potential guardian and asked for the goal of the case plan to be guardianship with that individual. May Lynn objected, and the matter was set for an evidentiary hearing. By February 2011, the potential guardian had become "wishy-washy" due to the girls' behaviors after visits with May Lynn. The parties attempted mediation, but the mediation failed. In May 2011, the potential guardian decided to move to another state and requested that DHHS remove the girls from the home.

After an extensive search, DHHS found a second potential guardian and sought to place the girls with her. In July 2011, the juvenile court heard evidence on DHHS' motion for

a change of placement. At that hearing, May Lynn opposed guardianship because she loved her daughters and wanted "to have say in their life." At the end of the hearing, the juvenile court granted DHHS' motion and also suggested that May Lynn's attorney inform her of how visits would work under a guardianship. Her attorney said he had tried to go over it with her several times to no avail. By November 2011, DHHS expressed concern for the girls because the second potential guardian's interest had become conditional. The second potential guardian would consider guardianship only if Brianna's behavior improved. Brianna's therapist opined that Brianna's behavior would improve only if her contact with May Lynn decreased. May Lynn opposed the guardianship again, noting that she had not been happy with guardianship once she understood its meaning. Visitation with May Lynn continued. The next month, the second potential guardian requested that the girls be removed. DHHS moved to place them with the only potential guardian remaining on its list, and the juvenile court approved the change.

In March 2012, placement with the third potential guardian was going well and DHHS moved to appoint the guardian and have the order completed. DHHS noted that it recommended May Lynn receive visitation in the event guardianship was approved. The juvenile court decided to table the motion to establish guardianship in order to make sure the correct procedures were being followed. The judge requested that DHHS file the appropriate paperwork and schedule a hearing on the motion.

The next week, DHHS filed a motion to establish guardianship through alternative disposition, pursuant to § 43-247(3)(a) and (10); Neb. Rev. Stat. § 43-284(3) and (5) (Reissue 2008); and Neb. Rev. Stat. § 43-285(1), (3), and (5) (Supp. 2011). The juvenile court held a hearing on the motion in July 2012. May Lynn objected on the ground that the elements set forth in the probate code needed to be established. The juvenile court overruled the objection and proceeded. Due to the volume of testimony and the time constraints, hearing on the motion occurred on three separate dates in July, September, and November 2012. At the November hearing, May Lynn

testified that she loved her daughters and wanted to parent them. She opposed guardianship. May Lynn also requested mediation regarding visitation in the event that guardianships were established.

In December 2012, the juvenile court issued orders approving guardianships. The court noted its exclusive jurisdiction over juveniles as described in § 43-247 and the grant of authority over guardianships of individuals within its jurisdiction as outlined in § 43-247(9). The juvenile court relied on *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000), to determine § 43-285(3) authorized it to award custody to a family designated by DHHS as suitable guardians without resort to the probate code.

The juvenile court then found that continuing the girls in May Lynn's home was contrary to their best interests, that reasonable efforts had been made to reunify the girls with May Lynn, and that due diligence had been used to attempt to locate and notify the girls' father. The court then sustained the State's motion for guardianship and wrote that DHHS should "commence filing its Petition for the Appointment of a Guardian for Mariella . . . and Brianna . . . . Following the entry of an Order approving the Guardianship and the acceptance by the proposed guardians, [DHHS] and all court-appointed attorneys shall be dismissed . . . ." The court noted this was a "bitter-sweet resolution to a distressing slice of life's reality" and informed May Lynn that she could petition the court for restoration of custody upon changed circumstances. Finding it was not authorized to order visitation, the court strongly encouraged May Lynn and the guardian to negotiate a suitable schedule.

The letters of guardianship were issued in January 2013. May Lynn timely appealed.

## III. ASSIGNMENTS OF ERROR

On appeal, May Lynn argues that the letters of guardianship were improperly issued and that the trial court erred in failing to award visitation.

## IV. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent

of the juvenile court's findings. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witness and accepted one version of the facts over the other. *Id.*

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999).

## V. ANALYSIS

### 1. Letters of Guardianship
### Were Issued Properly

May Lynn's first assignment of error is that the letters of guardianship were issued contrary to the trial court's order and in violation of her constitutional right to procedural due process. We disagree.

### (a) Juvenile Court Order

In its order approving guardianship in December 2012, the juvenile court sustained the State's motion to establish guardianship and then wrote that DHHS should "commence filing its Petition for the Appointment of a Guardian for Mariella . . . and Brianna . . . . Following the entry of an Order approving the Guardianship and the acceptance by the proposed guardians, [DHHS] and all court-appointed attorneys shall be dismissed . . . ."

In January 2013, the letters of guardianship were issued. Although the juvenile court's language requiring the State to file a petition creates confusion, in the context of the rest of the juvenile court's order and the proceedings prior to the order, it is evident that the juvenile court intended its order to establish guardianship. The juvenile court manifested its intent by carefully informing the parties on the record that it was holding a hearing on the State's motion to establish guardianship, making the requisite findings, sustaining the motion, and then issuing the letters of guardianship. Given all the steps the juvenile court took to establish guardianship, its statement that

the State should file a petition for guardianship is insufficient to prove the court did not intend to sustain guardianship and issue the letters.

### (b) Probate Code Procedures

May Lynn next argues that the juvenile court erred in issuing letters of guardianship because it did not follow the appropriate proceedings for establishing guardianship. Specifically, May Lynn argues that DHHS was required to follow the procedures outlined in Neb. Rev. Stat. § 30-2608 (Reissue 2008) in order to establish guardianship. Section 30-2608 requires a party seeking to establish guardianship to file a petition in county court. May Lynn argues that the failure to follow this procedure deprived her of notice. We have previously established, however, that a juvenile court does not need to resort to the probate code to establish a guardianship over a minor within its jurisdiction. Moreover, in this case, the procedures followed in juvenile court afforded May Lynn sufficient notice of the guardianship proceedings.

[1,2] Under the juvenile code, once a minor is adjudged to be within the definition of § 43-247(3), the juvenile court acquires exclusive jurisdiction over the juvenile and the parent who has custody of the juvenile. *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000). Section 43-247(9) provides the juvenile court jurisdiction over the guardianship proceedings of a juvenile described elsewhere within the code. In *In re Guardianship of Rebecca B. et al., supra*, the Nebraska Supreme Court held that § 43-285(3) authorized a juvenile court to establish guardianships for juveniles in the custody of DHHS without resorting to a proceeding under the probate code. In this case, because Mariella and Brianna were both in the custody of DHHS, the juvenile court had authority to establish guardianship under the juvenile code.

May Lynn argues that even if the trial court were authorized to establish guardianship under the juvenile code, she was still entitled to procedures that afforded her notice of guardianship. The record in this case establishes, however, that May Lynn had ample notice of the guardianship hearing. DHHS established guardianship as the permanency goal in the case

plan years before the hearing, that change was approved by the court, and guardianship was discussed at almost every status meeting after October 2009. If these discussions did not provide May Lynn sufficient notice, she was certainly on notice after DHHS filed a motion to establish guardianship. A hearing was held on that motion prior to the court's approving guardianship. For these reasons, we find May Lynn's argument without merit.

## 2. Failure to Establish Visitation

May Lynn's second assignment of error is that the trial court erred in failing to establish a visitation plan for her after sustaining DHHS' motion for guardianship. We determine that the juvenile court erred in finding it lacked authority to order visitation for May Lynn. Accordingly, we reverse in part, and remand to the juvenile court for a determination of May Lynn's visitation rights.

[3] May Lynn argues that the juvenile court erred in finding it lacked statutory authority to order visitation and in failing to order the visitation. DHHS notes that no statute specifically authorizes a juvenile court to award visitation in an established guardianship. As a statutorily created tribunal, the juvenile court has only such authority as has been conferred on it by statute. *In re Interest of Jaden H*., 263 Neb. 129, 638 N.W.2d 867 (2002). At the same time, the purpose of the juvenile court is to protect and promote the welfare of juveniles. The court's "powers and duties are described more or less in detail in our statutes, and because of their humanitarian and beneficent purpose, they should be liberally construed to the end that their manifest purpose may be effectuated to the fullest extent compatible with their terms." *Stewart v. McCauley*, 178 Neb. 412, 418, 133 N.W.2d 921, 925 (1965). Rather than creating a new court, the juvenile court law "merely gave a court with general common law and equity jurisdiction new and additional powers. These powers do not supersede its original jurisdiction but are supplemental to it." *Id*.

[4-6] The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests. *In re Interest of Veronica H*., 272 Neb. 370, 721

N.W.2d 651 (2006). Accordingly, the juvenile code must be construed to ensure the rights of all juveniles to care and protection. See *id*. The Nebraska Juvenile Code must be liberally construed to serve the best interests of juveniles who come within the provisions of the act. *In re Interest of Veronica H.*, *supra*. As such, juvenile courts are accorded broad discretion in their determination of the placement of children adjudicated abused or neglected and to serve the best interests of the children involved. *Id*.

[7,8] Although no statute explicitly authorizes awarding visitation within the context of a guardianship, we have previously determined that the continuing jurisdiction of the juvenile court allowed the court to order supervised visitation after terminating a mother's parental rights when the order was in the best interests of the children. See *In re Interest of Stacey D. & Shannon D.*, 12 Neb. App. 707, 684 N.W.2d 594 (2004). We have also found that the juvenile court has the authority to devise "unique" foster care situations not set out in the "'checklist'" of statutory options when a unique arrangement would be in the best interests of the child. *In re Interest of Holley*, 209 Neb. 437, 444, 445, 308 N.W.2d 341, 346 (1981).

[9-11] As was the case in *In re Interest of Stacey D. & Shannon D., supra*, the juvenile court retains jurisdiction over a juvenile in a guardianship. A guardianship does not achieve the same degree of permanency as parenthood or adoption. *In re Interest of Antonio S. & Priscilla S.*, 270 Neb. 792, 708 N.W.2d 614 (2005). Legal custody is not parenthood or adoption and the person appointed guardian is subject to removal at any time. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). When a guardianship is established, a parent retains the right to petition the court for restoration of custody and full parental rights in the event of a change in the circumstances which justified the guardianship and supported the finding of the parent's unfitness. *In re Interest of Amber G. et al., supra*.

[12] Given our holding in *In re Interest of Stacey D. & Shannon D., supra*, and the broader purposes of the juvenile

code, we determine that the juvenile court maintains the authority to create visitation arrangements within the context of a guardianship, so long as those arrangements are in the best interests of the juvenile. In this case, the juvenile court was operating under the misconception that it was without authority to order visitation. Because we determine that the juvenile court does have the authority to order visitation between the mother and the affected juvenile, we reverse in part, and remand to the juvenile court for a determination of May Lynn's visitation rights.

## VI. CONCLUSION

We determine that the juvenile court properly issued the letters of guardianship, and therefore, we affirm that portion of the juvenile court's decision. The juvenile court erred, however, in determining that it lacked authority to award visitation rights in a guardianship proceeding. Accordingly, we reverse in part, and remand to the juvenile court for a determination of May Lynn's visitation rights.

Affirmed in part, and in part reversed
and remanded with directions.

Pirtle, Judge, participating on briefs.

---

In re Interest of Jayden D. and Dayten J.,
children under 18 years of age.
State of Nebraska, appellee, v. Yolanda W.,
formerly known as Yolanda O., appellant.
___ N.W.2d ___

Filed January 14, 2014.    No. A-13-193.

1. **Indian Child Welfare Act: Jurisdiction: Appeal and Error.** A denial of a transfer to tribal court under the Indian Child Welfare Act is reviewed for an abuse of discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.