amended after Skyline ceased to operate SRC as a retirement community subject to § 76-1313.

The fact that § 76-1313 does not presently obligate Skyline to provide for the election of a resident director by the residents of SRC does not change the fact that Skyline's bylaws and articles of incorporation continue to so provide. And no provision of law prevents Skyline from so providing. Link was duly elected as the resident director in 2011 and was serving in that capacity at the time he filed the derivative action. Link therefore has standing to bring the action.

## CONCLUSION

For the foregoing reasons, Link has standing to bring this derivative action. We reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

IN RE INTEREST OF JUSTINE J. AND SYLISSA J.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT, V.
SHAWNA R., APPELLEE.
___ N.W.2d ___

Filed July 18, 2014.    No. S-13-993.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Rules of the Supreme Court: Appeal and Error.** Where the brief of a party fails to comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012), an appellate court may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error.
3. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
4. **Parental Rights: Abandonment: Words and Phrases.** For purposes of Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 2012), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child.

5. **Juvenile Courts: Parental Rights.** Termination of parental rights is permissible only in the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code.
6. **Evidence: Words and Phrases.** Clear and convincing evidence means the amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved and, further, that it is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt.

Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH CRNKOVICH, Judge. Affirmed.

Donald W. Kleine, Douglas County Attorney, Jennifer Crystal-Clark, and Patrick McGee, Senior Certified Law Student, for appellant.

Cassidy V. Chapman and Andrea M. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

WRIGHT, J.

### NATURE OF CASE

The State appeals from the order of the Douglas County Separate Juvenile Court which found that the minor children came within the meaning of Neb. Rev. Stat. § 43-292(1) and (9) (Cum. Supp. 2012), but that termination of the mother's parental rights was not in the children's best interests. The juvenile court specifically found that the State had not shown by clear and convincing evidence that such termination was in the children's best interests. We affirm.

### SCOPE OF REVIEW

[1-3] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). However, where the brief of a party fails to comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265

(2013). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## FACTS

This appeal involves Shawna R.'s parental rights to her biological daughters Sylissa J. and Justine J. The State did not seek to terminate the parental rights of the girls' father. Shawna has two other minor children; however, her parental rights to these two children are not the subject of this appeal.

On April 11, 2012, the State petitioned to remove Sylissa, age 14, and Justine, age 11, from Shawna's home. Both girls reported finding drug paraphernalia in the home, including pipes and needles. They reported that Shawna and her husband used drugs and alcohol regularly, left the girls alone in an unsecured house at night, did not provide food for the girls, and engaged in domestic violence. The juvenile court ordered that the girls be placed in the custody of the Nebraska Department of Health and Human Services (DHHS).

The next day, the State filed a petition alleging that Sylissa and Justine came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2012) and lacked proper parental care by reason of the faults and habits of Shawna and her husband. Shawna did not contest the juvenile court's adjudication that Sylissa and Justine were at risk of harm under § 43-247(3)(a) due to her faults and habits. See *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). Following the adjudication, the children were to remain in the temporary custody of DHHS for appropriate care and placement.

On July 24, 2013, the State moved to terminate Shawna's parental rights to Sylissa and Justine. It alleged that both girls came within the meaning of § 43-292(1) (abandonment) and (9) (aggravated circumstances). At the termination hearing, Cynthia Lee, a family permanency specialist at Nebraska Families Collaborative, testified that she had worked with Shawna's family since November 2012. At that time, Shawna informed Lee that she wanted to have visits with her children.

Shawna was required to undergo urinalysis testing to confirm her sobriety prior to commencing visits, and Lee arranged the testing. Three urinalyses during a 2-week period in November and December 2012 were "clean." Lee testified that she then contacted an agency to establish visitation, but at that time, Shawna could not be located. After December 2012, Lee had no physical address or telephone number for Shawna.

Shawna met with Justine one day after school between December 2012 and January 2013. Justine's former foster mother testified that Justine had stayed after school for a football game, that Shawna picked Justine up, and that Shawna later returned Justine to the school.

In February 2013, the children informed Lee that Shawna was in Florida. Lee testified that Sylissa and Justine had had unauthorized contact with Shawna via their "Facebook" accounts and that for a period of several months, Shawna and Justine communicated via Facebook approximately once every other week. Generally, Justine initiated contact with Shawna.

Shawna e-mailed Lee in July 2013 to inquire about the placement of her two younger children. Shawna briefly corresponded with Lee regarding that placement, but she did not respond to the 10 to 15 e-mails Lee sent to her thereafter.

Because Shawna did not maintain contact with Lee, she was never able to arrange visitation between Shawna and her children or provide services other than the urinalyses. At the time of trial, Lee did not know Shawna's whereabouts or if Shawna was in a position to resume the care and custody of her children.

Based on her education, training, and work with the family in this case, Lee believed it was in the best interests of the children to terminate Shawna's parental rights. It was Lee's opinion that the children had not had substantial contact with Shawna and that the children needed permanency.

At the time of trial, the permanency plan was for Justine to remain with her biological father. Sylissa had been placed with her aunt and uncle in Chadron, Nebraska, who were her guardians.

Lee testified that if Shawna's parental rights were terminated, Sylissa and Justine would no longer be eligible to receive potential survivor benefits, retirement benefits, life insurance benefits, or child support. She agreed that it would not be in the children's best interests to be ineligible for such benefits. But she denied knowing of any benefits for which the children were eligible.

The juvenile court found clear and convincing evidence that Sylissa and Justine came within the meaning of § 43-292(1) and (9) insofar as Shawna was concerned. But it also found that the State had not proved by clear and convincing evidence that termination of Shawna's parental rights to Sylissa and Justine was in the girls' best interests. It noted that the permanency plan for Sylissa and Justine was not one of adoption, but, rather, guardianship and/or family preservation. The State appeals.

## ASSIGNMENT OF ERROR

The State's brief does not contain a separate section for assignments of error and does not set forth separately numbered assignments of error as required by § 2-109(D)(1)(e).

## ANALYSIS

The State appeals from a dispositional order in which the juvenile court found grounds for termination under § 43-292(1) and (9) due to abandonment, but found that the State had not proved by clear and convincing evidence that termination of Shawna's parental rights was in Sylissa's and Justine's best interests. Because the State failed to include a separate section in its brief assigning error, we will review the court's refusal to terminate Shawna's parental rights for plain error.

[4] In relevant part, § 43-292 provides:

> The court may terminate all parental rights between the parents . . . and [a] juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

(1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition;

. . . .

(9) The parent of the juvenile has subjected the juvenile or another minor child to aggravated circumstances, including, but not limited to, abandonment . . . .

For purposes of § 43-292(1), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Dustin H. et al.*, 259 Neb. 166, 608 N.W.2d 580 (2000).

Except for one unauthorized visit with Justine and occasional Facebook messages, Lee, the family permanency specialist, received no information concerning contact between Shawna and the girls from November 2012 to October 2013. Shawna did not maintain contact with Lee. As a result, Shawna did not avail herself of services which were available to her and which would have aided her in maintaining a loving relationship with the girls and in caring for their needs. We do not find plain error in the juvenile court's conclusion that Shawna abandoned Sylissa and Justine pursuant to § 43-292(1) and (9).

[5] Having found no plain error in the juvenile court's determination that the State had met its burden to show the requisite statutory grounds under § 43-292, we next consider whether it was plain error for the juvenile court to conclude that the State had failed to prove by clear and convincing evidence that termination of Shawna's parental rights was in Sylissa's and Justine's best interests. In so finding, the juvenile court expressly relied on Lee's testimony that the permanency plan for Sylissa and Justine is not one of adoption, but, rather, guardianship and/or family preservation with the father. Termination of parental rights is permissible only in the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code. See *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999).

In the present case, Lee, the family permanency specialist, testified that based on her education, training, and work with the family, she believed it was in the best interests of the children to terminate Shawna's parental rights. She stated that the children had not had substantial contact with Shawna and that the children needed permanency. But Lee also testified that Justine's permanency plan was to stay with her father, whose parental rights remained intact, and that Sylissa's permanency plan was for her aunt and uncle to achieve guardianship. These permanency plans could be carried out regardless of whether Shawna's parental rights were terminated.

This court has recognized guardianship as a "permanent resolution." See *In re Interest of Antonio S. & Priscilla S.*, 270 Neb. 792, 797, 708 N.W.2d 614, 618 (2005) (appointment of DHHS as guardian is intended as temporary arrangement which, insofar as possible, will be replaced by permanent resolution, such as returning child to his or her biological parent(s), termination of parental rights and adoption, or new guardianship).

In *In re Interest of Eden K. & Allison L.*, 14 Neb. App. 867, 717 N.W.2d 507 (2006), the Nebraska Court of Appeals concluded that the juvenile court erred in finding that the State had established, by clear and convincing evidence, that termination of the mother's parental rights was in the children's best interests. At the time of trial, the children were residing with relatives, with no possibility of adoption. The Court of Appeals observed, "There is nothing in the record to suggest that terminating [the mother's] parental rights would provide the children with any more permanency than they would have otherwise." *Id.* at 881, 717 N.W.2d at 517-18.

Here, the State presented very little evidence pertaining to the children's best interests. It called Lee to testify concerning her work with the family. The other witness was Justine's former foster mother, who testified briefly concerning Justine's after-school visit with Shawna. There was no evidence concerning the children's progress or their attitudes toward Shawna. No therapist or other expert testified how or why it would be in the children's best interests to terminate Shawna's parental rights.

Similarly, in *In re Interest of Aaron D*., 269 Neb. 249, 691 N.W.2d 164 (2005), one caseworker testified concerning the child's best interests. That caseworker's testimony was based in large part on the records of family support workers, foster parents, and therapists. This court concluded that the State had not proved by clear and convincing evidence that terminating the mother's parental rights was in the child's best interests:

> Because the primary consideration in determining whether to terminate parental rights is the best interests of the child, a juvenile court should have at its disposal the information necessary to make the determination regarding the minor child's best interests regardless of whether the information is in reference to a time period before or after the filing of the termination petition. . . . Yet, the juvenile court in this case, and this court for its de novo review, was not provided with such evidence. [The child's] therapists did not testify. [DHHS'] family support workers, who actually observed [the child] and [the mother], did not testify, nor did [the child's] foster parents, nor [the child's] teachers. The State seems to have forgotten that the focus of this proceeding is not [the mother], but [the child], and the State thus did not present evidence directly adduced from many of the people most able to testify as to [the child's] condition, circumstances, and best interests, both before and after the filing of the termination petition. The standard for proving that termination of parental rights is in a juvenile's best interests is clear and convincing evidence, and the evidence in this record is, simply stated, neither clear nor convincing.

*Id*. at 263, 691 N.W.2d at 175 (citation omitted). See, also, *In re Interest of Eden K. & Allison L., supra* (finding no clear and convincing evidence that termination was in best interests of children because there was no evidence of needs or interests of children and because there was no evidence that termination would provide additional permanency). The instant case presented even less evidence relevant to best interests than the record in *In re Interest of Aaron D., supra*.

[6] Clear and convincing evidence means the amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved and, further, that it is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *In re Interest of Eden K. & Allison L.*, 14 Neb. App. 867, 717 N.W.2d 507 (2006). We conclude that the juvenile court did not commit plain error in finding that there was not clear and convincing evidence that termination of Shawna's parental rights was in Sylissa's and Justine's best interests.

## CONCLUSION

For the foregoing reasons, we affirm the juvenile court's order.

AFFIRMED.