IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF JEREMIAH L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JEREMIAH L.,
A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN L., APPELLANT, AND MEAGHAN L., APPELLEE.

Filed April 7, 2020.    No. A-19-692.

Appeal from the County Court for Hall County: JOHN P. RADEMACHER, Judge. Affirmed.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

James H. Truell, of Truell, Murray & Associates, for appellee Meaghan L.

Katherine J. Doering and Katherine J. Collins, Deputy Hall County Attorneys, for appellee State of Nebraska.

Grady C. Erickson, guardian ad litem.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Justin L. and Meaghan L. appeal an order of adjudication entered by the County Court of Hall County, sitting as a juvenile court, which found Jeremiah L. to be a child under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). For the following reasons, we affirm.

- 1 -

BACKGROUND

Justin and Meaghan are the parents of Jeremiah, born in February 2018. On January 11, 2019, the State of Nebraska filed a Juvenile Petition alleging that Jeremiah lacked proper parental care by the fault of his parents and was in a dangerous situation. Specifically, the State alleged:

Jeremiah's siblings were previously placed into DHHS custody in February 2017 because of domestic violence, dad's alcohol abuse and physical abuse. In September 2018, the older children were placed with mom while dad was incarcerated. DHHS has received reports that dad has been abusive towards the children, including shaking and throwing Jeremiah. Dad continues to drink and will not participate in court ordered treatment. Mom admits that she is not following the safety plan, which included having dad's visits with the children be supervised.

On January 11, 2019, an ex parte custody order was issued, placing Jeremiah in the custody of the Nebraska Department of Health and Human Services (DHHS). On July 2, a contested adjudication hearing was held. The following evidence was presented at the hearing.

Jennifer Whitney, a caseworker for DHHS, testified about her work with the family. Whitney indicated that Jeremiah has two older brothers who were removed from the parents' care in February 2017 after "there had been a physical altercation between Meaghan and Justin that involved alcohol use when there was a safety plan put into place." A certified copy of the juvenile case concerning Jeremiah's brothers was received into evidence.

At the time of Jeremiah's birth, Meaghan was living at Hope Harbor homeless shelter and Justin was incarcerated. DHHS had initially determined that Jeremiah was safe living with Meaghan at Hope Harbor. At the time, the two older children were in foster care. In May 2018, Meaghan left Hope Harbor, moved to a hotel for a brief time, and then obtained an apartment. Meaghan had been asked to leave Hope Harbor after leaving the children unattended and for hitting one of her older children.

In September 2018, the two older children were returned to Meaghan's care while Justin was still incarcerated. The juvenile case regarding the older children remained open. Justin was released from his incarceration approximately a week later and returned to the home to live with Meaghan and the children. Subsequently, DHHS received an intake regarding possible physical abuse by Justin towards one of the older children. The brother had sustained an injury defending Meaghan during a verbal fight she was having with Justin. A safety plan was then put into place (first safety plan). This safety plan included the provision that Meagan and Justin were not to argue in front of the children. Specifically, the plan required that if an argument began, one of the parents was supposed to leave and they were supposed to utilize text messaging to talk about the matter. Meaghan admitted to not following the first safety plan, and that she and Justin continued to have yelling arguments around the children.

In December 2018, there was another incident between Meaghan and Justin. During this incident, Justin allegedly threw Jeremiah on the couch. Meaghan and the children left the home for a period of time until Justin returned to jail as a result of a probation violation, at which time Meaghan and the children returned to the home. A new safety plan was implemented in December 2018 (second safety plan) that required that all contact between Justin and the children be

supervised through providers and not Meaghan. The children were removed from Meaghan's care on January 11, 2019. Whitney testified that, based on her individual visits with the boys and with Meaghan, she determined that the safety plan was not being followed and that unsupervised contact was being allowed. Whitney testified that she believed that there was a safety threat and Jeremiah lacked proper parental care.

Miranda Wagner was employed through Owens and Associates to supervise visits between Justin and the children. At this point, all interactions between Justin and the children were supposed to be supervised. On January 10, 2019, Wagner observed an unsupervised interaction between Justin and the children when he delivered a vehicle to Meaghan and the children proceeded to get in the vehicle. Neither Meghan nor Justin were forthright in their explanations to Wagner as to why Justin was at Meaghan's apartment; nonetheless, it was obvious that Justin's presence at the apartment was planned. When Wagner confronted Justin, he told Wagner that he was leaving, stating that he had just had visitation with the children.

Rene Aranda, Justin's probation officer, testified that Justin was required to attend drug and alcohol treatments and to undergo alcohol testing. Justin had two positive alcohol tests in November 2018.

Jeremiah's older brother, Jake, also testified. Jake testified that Justin threw Jeremiah on the couch during a fight with Meaghan, who watched the incident but did not intervene. Jake testified that before this incident, Justin had been drinking beer.

Jake's therapist, Chrissy Peard, testified that she spoke to Justin about Jake's report that Justin threw Jeremiah on the couch, but Justin did not remember the incident, claiming he had drank a lot of alcohol that evening. Although he could not remember, Justin told Peard he believed Jake's claims about the night. Peard testified that she had concerns about inappropriate parenting with Jake and further concerns that if his needs were not being addressed, it may affect Jeremiah. At the time of removal, Meaghan and Justin were not attending Jake's therapy sessions.

Grand Island Police Investigator Timothy Champion investigated the December 2018 incident in which Justin allegedly threw Jeremiah on the couch. Meaghan told Champion that on December 10, 2018, she was arguing with Justin who pushed one of the children out of the house. She admitted that it was possible that Justin threw Jeremiah on the couch. She also testified that she knew Justin had been drinking, despite being on probation. Champion had watched Jake's forensic interviews about the December 2018 incident, but it was inconclusive as to whether or not Jeremiah was injured in the incident.

Prior to its rest, the State re-called Whitney. Whitney testified that Justin did not go to alcohol treatment until after the children were removed. Although DHHS had safety concerns prior to the removal, they waited until January 11, 2019, to remove the children after Wagner discovered the safety plan was not being followed. Whitney testified that DHHS did not remove the children after the December incident because they felt that Meaghan had acted appropriately, but that opinion had changed after Meaghan failed to follow the safety plan.

The parents did not offer any evidence. In an order entered on July 8, 2019, the juvenile court sustained the allegations of the petition, finding that "Jeremiah is in harm and continues to be in harm." The juvenile court concluded that Jeremiah is a child under Neb. Rev. Stat. § 43-247(3)(a). The court continued Jeremiah's out of home placement. Justin appealed on July 17, and Meaghan filed a second notice of appeal on July 19.

## ASSIGNMENT OF ERROR

Jeremiah assigns that the juvenile court erred in finding that the State met its burden of proof that Jeremiah is as defined under § 43-247(3)(a). Meaghan has filed a "Brief of Appellee" asserting that the juvenile court erred in the same respect.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

## ANALYSIS

Under § 43-247(3)(a), a juvenile court has jurisdiction of any juvenile

who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; who is in a situation or engages in an occupation, including prostitution, dangerous to life or limb or injurious to the health or morals of such juvenile; or who, beginning July 1, 2017, has committed an act or engaged in behavior described in subdivision (1), (2), (3)(b), or (4) of this section and who was under eleven years of age at the time of such act or behavior[.]

The State then has the burden to prove the allegations of the petition by a "preponderance of the evidence," which is the equivalent of the greater weight of the evidence. *In re Interest of Jeremy U. et al., supra*. The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true. *Id*.

In considering whether a juvenile lacks proper parental care, our case law has incorporated a risk of harm component. *Id*. This stems from the part of the definition of proper parental care "command[ing] that the child not be placed in situations dangerous to life or limb, and not be permitted to engage in activities injurious to his health or morals." *Id*. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id*.

In this case, the petition was filed alleging that Jeremiah's siblings were placed in DHHS custody due to concerns of domestic violence, physical abuse, and alcohol used by Justin; that DHHS received reports that Justin threw Jeremiah; that Justin continued to drink and failed to participate in court-ordered treatment; and that Meaghan was not following the safety plan. Through various testimony, the State proved all of these allegations. Whitney testified that

Jeremiah's siblings were previously in DHHS custody for abuse and neglect; that Meaghan was asked to leave Hope Harbor due to concerns of physical abuse, that DHHS implemented the first safety plan due to concerns of domestic violence and alcohol abuse, and that the first safety plan was not followed. The record shows that Justin and Meaghan continued to argue in front of the children and that in December 2018, Justin had been drinking alcohol and he threw Jeremiah on the couch. Justin moved from the family home and a second safety plan was adopted which required that all visitation between Justin and the children be supervised. Meaghan and Justin did not follow this safety plan.

*Justin's Appeal.*

Justin asserts that, at the time of the petition, the juvenile children were not in his care--they were in Meaghan's care. Therefore, Justin argues that any issues related to his substance abuse were irrelevant. However, Justin's substance abuse and domestic violence concerns were the reason the safety plans were put into place. The violation of these safety plans is what ultimately led to the removal of the children. Thus, Justin's substance abuse is a valid, continuing concern for DHHS.

Justin also asserts that Jake was not a credible witness, as he was only six years old at the time of the hearing. Justin does not separately assign as error the admission of Jake's testimony. Nevertheless, we note that the question of competency of a child witness lies within the discretion of the trial court, and that determination will not be disturbed in the absence of an abuse of discretion. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997). While no certain age has been deemed to be the age at which a child becomes competent to testify in a court of law, the court generally takes into consideration whether he or she is able to receive correct impressions by the senses, to recollect and narrate accurately, and to appreciate the moral duty to tell the truth. *Id.* In this case, the juvenile court questioned Jake to ensure that he knew the difference between a truth and a lie and was competent to testify. Further, although Justin disputes Jake's testimony in his brief, Justin previously told Peard that he had no reason to doubt Jake's recollection of the December 2018 incident. Thus, we give deference to the trial court who heard and observed Jake's testimony.

Justin further asserts that it was improper for the juvenile court to conclude that he was having unsupervised contact based on Wagner's testimony, as she did not observe any unsupervised contact between Justin and the minor children. However, Wagner's testimony indicates that Justin admitted to having unsupervised contact with the children, and Whitney's testimony indicated that she reached the same conclusion through her contact with the boys and Meaghan.

The records shows that DHHS had valid concerns for the safety of Jeremiah. It is well-established that the State does not have to wait for a child to be harmed or in immediate danger to intervene--they solely must show that the child is in definite risk of future harm. See *In re Interest of Jeremy U. et al., supra*. The juvenile court did not err in finding that Jeremiah was in definite risk of future harm and that there was sufficient evidence to adjudicate Jeremiah.

*Meaghan's Cross-Appeal.*

At the outset, we note that Meaghan failed to comply with the rules regarding cross-appeals. *See* Neb. Ct. R. App. P. §2-109(D)(4). Justin was the first party to file a notice of appeal, and therefore, he was the appellant. Pursuant to Neb. Ct. R. App. P. § 2-101(C), once a notice of appeal is filed, all other parties become appellees and can file a cross-appeal. Here, Meaghan properly designated herself as an appellee in her brief, but she failed to properly designate herself as a cross-appellant.

As a cross-appellant, Meaghan was required to comply with the rules on cross-appeals, including the requirement that she designate on the cover of her brief that it is a cross-appeal, and set forth her cross-appeal in a separate division of the brief entitled "Brief on Cross-Appeal." See § 2-109(D)(4). On her brief's cover, Meaghan does not specifically indicate that the brief contains a cross appeal although her brief is prepared consistently with § 2-109(D)(1), which sets out the requirements for an appellant's brief. Given Meaghan's failure to fully comply with § 2-109(D)(4), we must determine whether her brief sufficiently complies with our appellate court rules in order for this court to consider her assigned errors, or, alternatively, whether we should limit our examination of the record for plain error only or provide no review at all. See, e.g., *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014) (holding that where brief of party fails to comply with mandate of § 2-109(D), appellate court may proceed as though party failed to file brief, or alternatively, may examine proceeding for plain error.)

Recently, in *In re Interest of Steven S. et al*, 27 Neb. App. 831, 936 N.W.2d 762 (2020), this court set forth a detailed analysis of cases involving non-compliance with § 2-109(D)(4). We noted cases in which an appellate court has considered alleged errors of an appellee despite failure to comply with the rule. See, *In re Interest of Becka P. et al*, 27 Neb. App. 489, 933 N.W.2d 873 (2019) (mother filed "Brief of Appellee on Cross Appeal," prepared brief in form of appellant's brief, but did not separately respond to father's appellant's brief other than to accept his statement of basis of jurisdiction and statement of case); *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994) (appellee designated himself on cover of brief as appellant rather than as appellee/cross-appellant). On the other hand, we noted cases where our appellate courts declined to waive the rules and address the assigned errors of the purported cross-appellant. See, *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999); *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013) (parent titled brief as that of appellee, did not designate cross-appeal on cover page or set forth a separate division of brief as cross-appeal yet sought affirmative relief).

As we noted in *In re Interest of Steven S. et al., supra*, the key distinction in the above-cited cases is whether the cover and content of the brief puts an appellate court on notice that a party is seeking affirmative relief, whether identifying as an appellant or a cross-appellant. Designation as an appellee only does not provide such notification. We recognize that if an appellee and cross-appellant's position aligns with the appellant's position, as is often the case in juvenile court adjudications, there is usually no reason to separately respond as an appellee.

In this case, Meaghan labeled the cover of her brief "Brief of Appellee" but did not designate, either through the cover or an appropriately labeled section, that she was submitting a cross appeal. In addition, Meaghan's brief reveals that her position was not aligned with that of

Justin, the appellant. Here, Meaghan's brief was similar to those in *In re Interest of Natasha H. & Sierra H., supra*, and *In re Interest of Chloe P., supra*, where our appellate courts declined to waive the rules and address the assigned errors. We conclude that the same result is required here. Where the brief of a party fails to comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Justin J. & Sylissa J., supra*. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id*. We examine Meaghan's assigned error under this plain error analysis.

Meaghan first asserts that Jake was not a competent witness due to his age. However, Meaghan did not object to Jake's testimony at the hearing. To preserve a claimed error in admission of evidence, a litigant must make a timely objection which specifies the ground of the objection to the offered evidence. *Richardson v. Children's Hosp.* 290 Neb. 396, 787 N.W.2d 235 (2010). Because Meaghan failed to object at the hearing, she did not properly preserve the claimed error. Therefore, we find no plain error in the admission of Jake's testimony.

Meaghan next asserts that it was Justin who put the children at risk for harm, and she has been unfairly penalized for his actions. However, the record showed that Meaghan violated the safety plans and allowed Justin to have unsupervised contact with the children. These facts demonstrate that Meaghan did not take appropriate steps to protect her children. We find no plain error in the juvenile court's finding in this regard.

We find no error in the juvenile court's conclusion that Jeremiah was at a risk for harm and in adjudicating him. While it is inconclusive whether Jeremiah was actually injured during the December 2018 incident, the State only needed to prove that there was a risk of harm, not that he was actually injured. Further, both parent's inability to comply with the safety plan shows potential for future harm despite the measures in place intended to prevent such harm. Therefore, we affirm the juvenile court's adjudication of Jeremiah under § 43-247(3)(a).

CONCLUSION

We conclude that the juvenile court did not err in adjudicating Jeremiah, and in finding that the State proved by a preponderance of the evidence that there was a risk of harm. For the reasons set forth above, we affirm.

AFFIRMED.