Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2019 09:06 AM CST

- 831 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

In re Interest of Steven S., Jr., et al.,
children under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v. Steven S., Sr., appellant, and Jennette S.,
appellee and cross-appellant.

___ N.W.2d ___

Filed December 10, 2019.    Nos. A-18-1183 through A-18-1185.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Parental Rights: Proof.** Neb. Rev. Stat. § 43-292 (Reissue 2016) provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child.

3. **Parent and Child: Child Custody.** A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect.

4. **Parental Rights: Evidence: Appeal and Error.** If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in Neb. Rev. Stat. § 43-292 (Reissue 2016), the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground.

5. **Parental Rights: Proof.** Under Neb. Rev. Stat. § 43-292 (Reissue 2016), once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child.

6. **Parental Rights: Presumptions: Proof.** A child's best interests are presumed to be served by having a relationship with his or her parent. This

- 832 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

presumption is overcome only when the State has proved that the parent is unfit.

7. **Constitutional Law: Parental Rights: Words and Phrases.** In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being.

8. **Rules of the Supreme Court: Appeal and Error.** A cross-appellant is required to comply with the rules on cross-appeals, including the requirement that the cross-appellant designate on the cover of his or her brief that it is a cross-appeal, and set forth the cross-appeal in a separate division of the brief entitled "Brief on Cross-Appeal."

9. \_\_\_\_: \_\_\_\_. An appellate court may consider a party's cross-appeal, even though the party's brief violated Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014) requiring a separate section for a cross-appeal, where the form and presentation of the assignments of error in the party's brief conformed with Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014), which applies to an appellant's brief.

Appeal from the County Court for Scotts Bluff County: Kris D. Mickey, Judge. Affirmed.

Gretchen Traw, Deputy Scotts Bluff County Public Defender, for appellant.

Rhonda R. Flower, of Law Office of Rhonda R. Flower, for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Per Curiam.

## I. INTRODUCTION

Steven S., Sr., appeals, and Jennette S. cross-appeals, from an order entered by the Scotts Bluff County Court, sitting as a juvenile court, which terminated their parental rights to their three minor children: Steven S., Jr. (Steven Jr.) (case No. A-18-1183), Aodhan S. (case No. A-18-1184), and Genevive S. (case No. A-18-1185). We consolidate these three appeals for disposition, and we affirm the order of the juvenile court.

- 833 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

## II. BACKGROUND

### 1. Procedural Background

Steven and Jennette are the natural parents of Steven Jr., born in September 2005; Genevive, born in October 2011; and Aodhan, born in May 2013. Steven and Jennette are married, but by the time of the hearing on the State's motions to terminate their parental rights, they were living separately.

The current proceedings involving this family were initiated in October 2017. However, this is not the first time the family has been involved with either the juvenile court or the Department of Health and Human Services (the Department). In fact, the family has a lengthy history with the Department. In 2000, the Department was contacted twice regarding Steven and Jennette's treatment of an older son, who is not a subject of the current proceedings. Both reports indicated that Steven and Jennette were neglecting the older son, who was then an infant, by failing to properly feed him, failing to bathe him, and failing to obtain necessary medical care for him. In 2001, Steven and Jennette's older daughter, who is also not a subject of the current proceedings, was removed from their care after she was taken to the hospital and tested positive for opiates and marijuana. These children are no longer in the custody of Steven and Jennette.

In 2006, the Department received a report that Steven and Jennette were neglecting Steven Jr., who was then 1 year old. The reporter indicated that the family home was "in a very bad state and [was] very dirty with cat and dog feces in the house." In 2011, Steven and Jennette's niece, who was living with them, reported that both Steven and Jennette were physically abusive to her. She had injuries consistent with her reports. Testimony from the termination hearing revealed that Steven was ultimately convicted of sexually abusing the niece and was jailed for 1 year.

From 2013 to 2016, the Department received four additional reports regarding Steven and Jennette. Each of these reports

- 834 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

indicated that Steven and Jennette were neglecting Steven Jr., Genevive, and Aodhan by not bathing the children, not providing a clean and safe home environment, and not obtaining necessary medical care for them. After each of these reports, the Department provided services to assist the family. In March 2017, 6 months prior to the initiation of the current court proceedings, the Department received another report regarding Steven and Jennette's neglect of the children. This report indicated that Aodhan was not receiving necessary medical care and that the children smelled of urine and body odor.

On October 6, 2017, the current proceedings were initiated when the State filed petitions alleging that Steven Jr., Genevive, and Aodhan were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to the fault or habits of Steven and Jennette. We note that at the time the petitions were filed, the family was still receiving assistance from the Department based on previous issues of neglect.

Also on October 6, 2017, the State filed motions asking that the children immediately be placed in the custody of the Department. In support of the motions, the State provided an affidavit authored by a deputy with the Scotts Bluff County sheriff's office. The affidavit indicated that the deputy visited the family home on October 6, after the Department had received another report regarding Steven and Jennette's neglect of the children. The deputy stated that upon his arrival at the home, he "was almost immediately overwhelmed with the smell of ammonia, the source of which appeared to be cat urine." The deputy observed numerous dirty dishes and dirty laundry scattered throughout the house. In addition, there were cat feces on the floor and on some of the laundry. The deputy indicated that "this [w]as one of the worst homes he has been in while working for the Sheriff's Department." The deputy believed that the children needed to be removed from the home for their safety. Ultimately, the juvenile court granted the State's motions for temporary custody, placing the children in the custody of the Department and outside of Steven and

- 835 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

Jennette's home. The children have remained outside of their parents' home since October 6.

Subsequent to the State's filing the original petitions, the State filed amended petitions on November 17, 2017. In the amended petitions, the State alleged that the children were at risk for harm because they lacked safe and sanitary housing and because Steven was currently incarcerated and unable to care for the children. Steven ultimately admitted that portion of the amended petition which alleged that the children were at risk for harm due to his continued incarceration. Jennette ultimately admitted that portion of the amended petition which alleged that the children were at risk for harm because she was not providing them with safe and sanitary living conditions. Given the parents' admissions, the juvenile court found Steven Jr., Genevive, and Aodhan to be within the meaning of § 43-247(3)(a).

A disposition hearing was held on January 9, 2018. We note that the record from this hearing reflects that Jennette was present at the hearing, but because she had been recently arrested and jailed, she appeared at the hearing "in custody." Jennette had apparently been charged with child abuse; however, the exact circumstances surrounding this charge are not discussed in our record. Steven was also present at the hearing, because he was no longer incarcerated.

At the hearing, the juvenile court ordered that Steven and Jennette comply with the case plan recommended by the Department. That case plan included directives for both Steven and Jennette to participate in a psychological evaluation and a parenting assessment; to take steps to maintain a clean and safe home environment, including working with a family support worker; and to attend supervised parenting time with the children and demonstrate age-appropriate supervision for each child. The Department indicated that prior to the hearing, both Steven and Jennette had participated in a psychological evaluation and a parenting assessment. The parties noted that they were awaiting the results of that testing.

- 836 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

A review hearing was held in April 2018. At this hearing, Steven and Jennette were ordered to "follow the recommendations of the comprehensive parental capacity evaluations." These recommendations included participating with individual and family counseling and medication management. A subsequent review hearing was held in July 2018. At this hearing, the juvenile court changed the permanency goal from reunification to adoption with a concurrent goal of reunification. Steven and Jennette were again ordered to comply with the Department's case plan.

On July 20, 2018, the State filed motions to terminate Steven's and Jennette's parental rights. In the motions, the State alleged that termination was appropriate pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (9) (Reissue 2016). The State also alleged that termination of Steven's and Jennette's parental rights was in the best interests of the children.

## 2. Termination Hearing Evidence

A hearing on the termination motions was held on September 27, 2018. At the hearing, the State called six witnesses to testify, including two Department caseworkers who had been assigned to the family's case, the clinical psychologist who conducted a psychological evaluation and a parenting assessment for both Steven and Jennette, Genevive and Aodhan's therapist, and Genevive and Aodhan's foster mother. The State's witnesses largely testified regarding Steven's and Jennette's failure to make any progress toward becoming appropriate parents for the children. Neither Steven nor Jennette fully took advantage of the rehabilitative services they were offered and ordered to complete. The witnesses also testified regarding the children's severe behavioral problems and the progress the children have made while living apart from their parents in foster care. In addition to the State's witnesses, Jennette called three witnesses to testify on her behalf. Each of these witnesses indicated that Jennette appeared to be an involved mother who had a bond with her children.

- 837 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

## (a) Evidence Regarding Steven

As we mentioned above, in October 2017, when the current proceedings were initiated, Steven was in jail. Evidence in our record indicates that his incarceration was the result of being convicted of writing bad checks. When Steven was released, he lived with Jennette. However, at the July 2018 review hearing, both Steven and Jennette testified that they were no longer living together. Jennette indicated that she told Steven to leave her home because he was not working and she no longer wanted to support him. Steven indicated that he was homeless and was sleeping in a tent which he pitched in various locations, including, on occasion, Jennette's backyard. Despite not having adequate housing for himself or for his children, Steven expressed that his primary desire was to obtain a vehicle.

Steven was unemployed from the time of his release from jail through at least July 2018 when he obtained part-time employment. At the review hearing held in July, Steven testified that although he had applied for various jobs, he struggled with finding employment that would accommodate his scheduled visitation with the children. We note that by this time in the proceedings, Steven had visitation with the children only on weekends. The Department assisted both Steven and Jennette financially with such expenses as utilities, gas, and their telephones, but even with this assistance, they were unable to meet their own basic needs.

During the pendency of the juvenile court proceedings, Steven failed to consistently participate with family support services. He also failed to demonstrate his participation in individual therapy, despite his reports that he started attending therapy in July 2018. The only service that Steven consistently took advantage of was supervised visitation with the children. However, the Department had concerns about statements made by Steven to the children during the visitation sessions. In addition, because of Steven's and Jennette's living situations, the visits never took place in their home. The visits with

- 838 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

Genevive and Aodhan took place at a visitation center, and the visits with Steven Jr. took place in a motel room, because he had been placed in a foster home in Omaha, Nebraska.

By the time of the termination hearing, Steven and Jennette saw their children every other weekend. They would have a visit with Genevive and Aodhan every other weekend and would have a visit with Steven Jr. on alternating weekends. Both of the Department caseworkers assigned to the case testified that during visits with the children, Steven and Jennette failed to follow through with disciplining the children, despite their behaviors, and as a result, struggled to control the children. They also spent a great deal of time looking at their telephones instead of interacting with the children and were sometimes not fully prepared with everything necessary to care for the children. Steven had to be repeatedly prompted to change Aodhan's diapers prior to the time he became potty trained. When asked, Steven and Jennette both indicated their belief that visits with the children were going well.

The results of Steven's psychological evaluation and parenting assessment further indicated the deficiencies in his parenting abilities. Dr. Gage Stermensky, the clinical psychologist who performed the evaluations on Steven, testified at the termination hearing that based upon the results of his evaluations, he believed that Steven currently lacked the ability to sufficiently care for his children. Stermensky testified that Steven suffered from bipolar disorder, antisocial personality disorder, and anxiety disorder. Antisocial personality disorder in particular can cause impulsivity and difficulty with being taught new skills or with being supervised. Furthermore, Stermensky said that Steven lacked insight into how his behaviors and actions impacted his children and that he lacked empathy for others and displayed an inability to meet his basic needs.

Stermensky opined that Steven would benefit from both behavioral therapy and medication compliance. Steven informed Stermensky that he was not currently taking any

- 839 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

medication because he could not afford to pay for the prescriptions. Stermensky indicated that there are programs available which provide assistance with the cost of prescriptions for mental health issues. Stermensky testified that ultimately, Steven's prognosis was "guarded" in that Stermensky had concerns about whether Steven would ever gain the capacity to be an appropriate parent. Such concerns included Steven's lengthy history of involvement with the Department without any significant or maintained improvements. Stermensky noted that even with the Department's help, Steven was still unable to meet his own basic needs. And, Stermensky questioned whether Steven would ever be able to meet his children's needs. Stermensky testified that given Steven's history, he would need to demonstrate improvement over a lengthy period of time, rather than just for a few months, prior to any change in his status with regard to the children.

There was evidence presented by the State's witnesses regarding allegations that Steven either had sexually abused Genevive or was grooming her for such sexual abuse. Genevive's foster mother, Susan M., testified that Genevive had disclosed multiple instances of sexual abuse, including reports of Steven's touching her with his penis and Jennette's taking pictures of her when she was not wearing any clothes. Susan also testified that Genevive displays sexualized behaviors, including masturbating "all the time." Similarly, Genevive's therapist, Mandy Price, testified at the termination hearing that Genevive had displayed sexualized behavior at school in addition to in her foster home. For example, Genevive wrote a letter to a high school football player expressing her desire to have a sexual relationship with him. Price testified that in her opinion, 6-year-old Genevive was able to describe sexual intercourse at a level "probably above the normal developmental stage." Genevive reported to Price, completely unprompted and "out of the blue," that Steven had touched her on her bottom with his penis. When Genevive made this report, she asked Price not to tell anyone about this information and she said she did

- 840 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

not want to disclose any further information about the incident. Price testified that she did not believe that Genevive's disclosures were the result of anyone "coaching" her about what to say.

While both Steven and Jennette denied the allegations of sexual abuse during the current proceedings, Jennette had previously reported her own concerns about Steven's relationship with Genevive. When Genevive was younger, Jennette took Genevive to the hospital with concerns that Steven was molesting her because he took too long to change her diapers. And, during a prior court proceeding, Jennette asked that Steven have only supervised visits with Genevive because of concerns that he was sexually abusing her. Moreover, as we noted above, Steven had previously been convicted of sexually abusing his young niece.

(b) Evidence Regarding Jennette

The children were initially removed from the family home due to its unsanitary and unsafe condition. Throughout the proceedings, Jennette had made some efforts to improve the home; however, by the time of the termination hearing, the condition of the home remained an issue. Jennette did pay to fix some of the subflooring in the home, to fix water damage present on the ceiling, and to build an enclosed porch. However, a "[v]ery potent" smell still existed in the home. The most recent Department caseworker, Abbie Wiebesiek, described the smell as consisting of "cat urine [and] old garbage." In addition, in February and March 2018, there was no electricity in the home and it was very cold. Wiebesiek testified that she had not visited the home since June because Jennette was no longer being cooperative about allowing her to walk through the home. In fact, Jennette essentially cut off contact with the Department in June after she was informed that the State was seeking termination of her parental rights.

Additionally, there was evidence that Jennette had a boyfriend who appeared to be living at her home. Jennette acknowledged

- 841 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

that Steven Jr. did not like her boyfriend. There was also evidence that the boyfriend was "aggressive" toward Steven Jr. and regularly used marijuana. Wiebesiek indicated that there was a "strange relationship dynamic" between Jennette, Steven, and Jennette's boyfriend.

Jennette acquired full-time employment in March 2018. Around this same time, she worked with family support to establish a budget for her monthly income so that she could pay for improvements to the family's home, help pay for travel to Omaha to visit Steven Jr., and save for the future. However, in July 2018, Jennette voluntarily terminated her employment, with no explanation. Jennette lied to the Department for the next 3 months about her employment status—she continued to report that she was employed, when she was not.

Jennette attended visitations with her children on a fairly consistent basis. However, as we discussed above, Jennette's behavior during the visitations was not always appropriate. She and Steven struggled to control the children, failed to consistently discipline them, and spent a great deal of time looking at their telephones. In addition to this behavior, Jennette would often speak with the children about inappropriate topics, including her relationship with Steven and the problems they were having as a couple.

Stermensky, who also completed a psychological evaluation and parenting assessment on Jennette, testified that she currently lacked the ability to sufficiently care for her children. Stermensky indicated that Jennette suffered from schizoaffective disorder, bipolar type. He explained that this disorder can cause disorganized thinking, a diminished ability to meet hygienic needs, manic and depressive episodes, and hallucinations. In addition, Jennette reported having poor coping skills and amplified psychosis and decompensation when she is experiencing a stressful situation. Stermensky indicated that Jennette did not recognize the full extent of her mental health symptoms or how those symptoms impacted the home environment.

- 842 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

Stermensky believed that medication compliance and therapy could mitigate Jennette's symptoms significantly and improve her ability to effectively parent her children. However, during her evaluation, Jennette told Stermensky that she had not "liked" the medications so she had stopped taking them. As a result, Jennette had not had any treatment for her disorder in an extended period of time. Stermensky recommended that Jennette engage in a long-term treatment program and that her visitation with the children be limited to therapeutic interactions.

Ultimately, Stermensky had serious concerns about Jennette's ability to gain the capacity needed to effectively parent her children. He noted that Jennette had been receiving assistance from the Department for quite some time, but had been unable to show any marked improvement in her parenting abilities. Stermensky stated, "The best predictor of, you know, future behavior is past behavior." He also noted that he had concerns about Jennette's relationship with her boyfriend and how that relationship may affect her ability to parent. Stermensky indicated that Jennette may allow individuals to be a part of her and her children's lives, even when that would not be in the children's best interests.

Evidence in the record indicated that after Jennette's evaluations with Stermensky, she affirmatively stated that she was participating in individual counseling. However, she failed to ever provide proof of her attendance. In addition, there was no evidence to indicate that she was taking any medication for her mental health problems. The record also indicated that by the time of the termination hearing, Jennette was reporting that she was pregnant again.

Jennette called three of her own witnesses to testify at the termination hearing. Two of these witnesses were workers who had visited the family's home to assist with the children's education and behavioral issues, prior to the children's removal in October 2017. Each of these witnesses testified that Jennette was very involved with the assistance programs

- 843 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

and was cooperative with their efforts. The witnesses testified that all of the children appeared bonded with Jennette. Each of the witnesses also indicated that the family's home had a strong smell and that keeping the home clean and sanitary was something that had to be addressed on more than one occasion. Jennette's third witness was a visitation worker who observed Jennette with Genevive and Aodhan after their removal. This witness testified that Jennette had demonstrated positive parenting skills and that the two younger children appeared to be bonded to Jennette. The witness also indicated that he had seen an improvement in the visits over time—the visits were calmer and the children were listening better and fighting less.

### (c) Evidence Regarding Children's
### Behavioral Issues

The State presented evidence focused on the children's behavioral issues and the improvements they have made while living in foster care. Steven Jr. has been diagnosed with Sturge-Weber syndrome, which causes seizures, developmental delays, and lower cognitive functioning. When the children were initially removed from Steven and Jennette's home in October 2017, they were all placed in the same foster home with Susan. Susan testified at the termination hearing that when Steven Jr. first arrived at her home, he had "[a] lot" of specialized needs. He would have "fits" if he did not get his way. Although he was 12 years old, he would still have accidents by urinating on himself. In addition, he was violent toward Genevive and Aodhan, hitting, kicking, and pinching them. He also threatened to harm everyone in his foster home. Susan described Steven Jr. as functioning more at the level of a 5 or 6 year old than a 12 year old. He was unable to meet any of his basic needs. Almost immediately after being placed in Susan's home, Steven Jr. needed to be hospitalized as a result of his seizures and the need to regulate his antiseizure medication.

After a month with Susan, Steven Jr. moved to a more specialized foster home in Omaha. Since his move, he had

- 844 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

made some improvements in his behavior, but he continued to be "very easily frustrated" and to have accidents where he urinated or defecated on himself. These problems were particularly prevalent both during and after Steven Jr.'s visits with his parents. Steven Jr.'s foster mother in Omaha enrolled Steven Jr. in special education classes and was working with him on learning to read.

In addition to the sexualized behavior exhibited by Genevive, she was described as being bossy, controlling, and untruthful. While Genevive had made improvements in her behavior during her time in foster care, she struggled after visits with her parents. Genevive had nightmares for 3 or 4 days after every visit. During these nightmares, she would wake up screaming. Genevive described these nightmares to Price, indicating that in the dreams Jennette would appear as a "monster" or would be "shooting people." Price testified that the consistency and regularity of the nightmares was concerning.

At the time of his removal in October 2017, Aodhan was 4 years old, but was not yet potty trained and was unable to speak well. Susan testified that Aodhan's behavior was "horrible." He reacted physically when he was told "no," including biting, hitting, kicking, and scratching. He called people derogatory names but, in other respects, he still acted younger than his age. Susan testified that Aodhan was also abusive to animals. She caught him attempting to drown one of the family's puppies and a couple of their cats. Price, who also acted as Aodhan's therapist for a few months, diagnosed him as suffering from an adjustment disorder.

In the time Aodhan had been in foster care, Susan testified that his behaviors had improved. She said he was calmer, was less physical when angry, and accepted discipline and redirection. In fact, Price testified that she decreased the frequency of Aodhan's therapy visits. However, after visits with his parents, Aodhan would "fight[]" in his sleep and ask to sleep with his foster father for comfort. In addition, he would regress in his

- 845 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

potty training, be more violent, use inappropriate language, and revert to acting younger than his age.

### 3. Juvenile Court's Order

On December 14, 2018, the juvenile court entered an order terminating Steven's and Jennette's parental rights to Steven Jr., Genevive, and Aodhan. The court found that the State had proved that termination of Steven's and Jennette's parental rights was warranted pursuant to § 43-292(2) and (6) and that termination was in the children's best interests. In the order, the court found:

> [I]n these cases, the system has run out of reasonable options and the prospects are dim that additional time will be of any benefit. Both parents have shown they are unwilling or incapable of rehabilitating themselves in the foreseeable future to properly parent these children. The system cannot and should not allow children to languish in foster care waiting to see if a parent will mature.

The court also specifically found "clear and convincing evidence exists that the parental circumstances and conditions at issue in these cases are long-standing and have existed over the course of many years." Additionally, while the court noted that the parents' efforts to consistently participate in supervised visitations with their children during the pendency of the proceedings was "commendable," the court ultimately found that "being a parent requires more than attending every other weekend visitations and necessitates acquiring the wherewithal to be a consistent, positive presence for a child's everyday basic needs, something far different than the parenting described in these cases."

Steven appeals, and Jennette cross-appeals, from the juvenile court's order.

### III. ASSIGNMENTS OF ERROR

On appeal, Steven alleges that the juvenile court erred in finding that there was sufficient evidence to prove (1) the

- 846 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

relevant statutory grounds for termination of his parental rights and (2) that termination of his parental rights was in the children's best interests.

On cross-appeal, Jennette also alleges that the juvenile court erred in finding that there was sufficient evidence to prove (1) the relevant statutory grounds for termination of her parental rights and (2) that termination of her parental rights was in the children's best interests.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

## V. ANALYSIS

### 1. Steven's Appeal

#### (a) Statutory Factors

[2] The bases for termination of parental rights in Nebraska are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Steven's parental rights to Steven Jr., Genevive, and Aodhan, the juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292(2) and (6). The relevant portions of § 43-292 provide as follows:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of

- 847 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

the juvenile and it appears by the evidence that one or more of the following conditions exist:

. . . .

(2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection; [and]

. . . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination.

[3] In his brief on appeal, Steven asserts that the juvenile court erred in finding that termination of his parental rights was warranted pursuant to § 43-292(2) or (6). Contrary to Steven's assertions, upon our de novo review of the record, we find that the State presented clear and convincing evidence to prove that termination of Steven's parental rights to his three children was warranted pursuant to § 43-292(2). The evidence presented at the termination hearing revealed that Steven had failed to provide his children with necessary parental care and protection for a significant period of time. Additionally, Steven had failed to put himself in a position to achieve reunification after his children were removed from his care. A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. See *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

Steven's children, Steven Jr., Genevive, and Aodhan, were placed in the custody of the Department and outside of Steven's home for approximately 10 months prior to the time the State filed its motion to terminate Steven's parental rights in July 2018. During that 10 months, Steven failed to obtain appropriate housing. While he initially resided in the family

- 848 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

home with Jennette, by the time of the termination hearing, he was homeless. He lived in a tent and traveled from backyard to backyard. Despite his tenuous living situation, Steven remained unemployed through July 2018, when the motion to terminate his parental rights was filed. And, although he had obtained some employment, it was only part-time work. Steven had expressed to the Department caseworkers that his primary goal was to obtain a vehicle, not a house. According to the Department caseworkers who worked with Steven, he had demonstrated that he was incapable of providing for even his own basic needs. As such, it was clear that he was not capable of providing for the extensive needs of his children, who, because of their behavioral issues, need a great deal of routine and structure.

Also during the 10 months prior to the filing of the motion to terminate his parental rights, Steven failed to participate in individual therapy and failed to demonstrate compliance with necessary medication management for his mental health issues. Stermensky opined that without such intervention, Steven would remain incapable of being an appropriate parent to his children. Steven also did not take full advantage of the family support worker available to assist him in meeting his basic needs.

Even when Steven was physically present with the children during visitations, he often neglected their needs. Evidence presented at the termination hearing revealed that Steven needed to be prompted to change Aodhan's diapers. He also failed to bring necessary supplies to visitations and spent a great deal of time looking at his telephone, rather than engaging with his children.

In our review of the record, we find sufficient evidence to demonstrate that, notwithstanding Steven's release from jail, his circumstances have remained virtually unchanged from the time of the children's removal in October 2017 to the time the State filed its motion to terminate his rights in July 2018. In fact, in some respects, Steven's circumstances have declined

- 849 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

since October 2017. He had made virtually no progress toward becoming an adequate parent for his children, despite the efforts of the Department and the juvenile court. Moreover, we note that Steven had a lengthy history of involvement with the Department and the juvenile court, but he had not yet demonstrated an ability to maintain any sort of long-term progress toward becoming an adequate parent even with years of assistance. Steven had not demonstrated that he could provide the children with the stability that they so desperately need. Steven had simply failed to provide an environment to which his children could return, and he had substantially, continuously, and repeatedly neglected Steven Jr., Genevive, and Aodhan.

Upon our de novo review of the record, we agree with the juvenile court's finding that the State presented sufficient evidence to demonstrate that Steven had substantially and continuously or repeatedly neglected and refused to give Steven Jr., Genevive, and Aodhan necessary parental care and protection pursuant to § 43-292(2). We find that the juvenile court did not err in finding that termination of Steven's parental rights was warranted pursuant to § 43-292(2).

[4] If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore, this court need not review termination under § 43-292(6).

Once a statutory basis for termination has been proved, the next inquiry is whether termination of parental rights is in the children's best interests.

### (b) Best Interests

[5-7] Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State

- 850 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id*. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

In his brief on appeal, Steven argues that the State failed to present sufficient evidence to prove that termination of his parental rights was in the children's best interests. He asserts that the evidence presented at the termination hearing revealed that he had a "strong bond" with his children and that his relationship with them was "beneficial." Brief for appellant at 19. Upon our de novo review of the record, we cannot agree with Steven's characterization of the evidence presented at the termination hearing. While there was limited evidence which suggested that the children enjoyed visits with Steven, the overwhelming evidence demonstrated that Steven's relationship with the children was harmful to them, and certainly not beneficial.

As we discussed more thoroughly above, each of the children have rather significant behavioral issues. During the pendency of these proceedings while the children resided in foster care, many of the children's behaviors improved or disappeared. However, whenever the children had visits with their parents, the children regressed and their behaviors

- 851 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

worsened. Steven Jr. would urinate or defecate on himself either during or immediately after his visits with his parents. Genevive would have nightmares for 3 or 4 days after each visit. Similarly, Aodhan would struggle to sleep after visits. He would "fight[]" in his sleep and ask to sleep with his foster father for comfort. In addition, Aodhan would act out more after visits, including acting younger than his age and using inappropriate language. The children's negative reactions to visits coupled with the recommendations of the professionals involved with this case resulted in Steven's visitation with the children never transitioning from fully supervised visits. Moreover, by the end of the proceedings, Steven was still only seeing his children every other weekend. We agree with the juvenile court's statement that being a parent requires more than attending brief visitations with the children every other weekend. Such limited time with the children does little to demonstrate either Steven's parenting abilities or the strength of his bond with his children.

Throughout the proceedings, Steven demonstrated an unwillingness or an inability to take steps toward improving his housing situation, his financial circumstances, or his mental health. As a result of Steven's failure to make any progress on these goals, he was no closer to achieving reunification with his children than he was at the start of the proceedings in October 2017. At the termination hearing, Wiebesiek testified that termination of Steven's parental rights was in the children's best interests for multiple reasons:

> For lack of case plan progress and continued concerns with sexual abuse. [Steven has] had two other children removed from the home that have been adopted. There's been prior investigations throughout every child's life, including one that wasn't [Steven's] own child. There ha[s] been a criminal charge of the sexual abuse for another child.
>
> . . . .

- 852 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

[There has been no] [f]inancial and housing stability and [Steven is unable] to meet [Steven Jr.'s] needs especially.

Wiebesiek also testified that Steven had not demonstrated any consistent progress or stability.

Based upon our review of the record, we agree with Wiebesiek's testimony that termination of Steven's parental rights was in all three children's best interests. The children should no longer have to wait for Steven to put them ahead of his own needs and wants. They should no longer have to wait for Steven to decide to make improvements to his current situation. The evidence presented revealed that Steven was not a fit parent for his children and that he was not capable of becoming a fit parent any time in the near future. The children need, and deserve, permanency. As such, we affirm the decision of the juvenile court which found that termination of Steven's parental rights was in Steven Jr.'s, Genevive's, and Aodhan's best interests.

## 2. Jennette's Cross-Appeal

At the outset, we note that Jennette failed to comply with the rules regarding cross-appeals. See Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014). Steven was the first party to file a notice of appeal, and therefore, he was the appellant. However, pursuant to Neb. Ct. R. App. P. § 2-101(C) (rev. 2015), once a notice of appeal is filed, all other parties become appellees and can file a cross-appeal. Here, Jennette properly designated herself as an appellee and as a cross-appellant when she filed a "BRIEF OF APPELLEE/CROSS APPELLANT."

[8] As a cross-appellant, Jennette was required to comply with the rules on cross-appeals, including the requirement that she designate on the cover of her brief that it is a cross-appeal, and set forth her cross-appeal in a separate division of the brief entitled "Brief on Cross-Appeal." See § 2-109(D)(4). On her brief's cover, Jennette does not specifically indicate that the brief contains a cross-appeal; however, she does title

- 853 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

her brief as "BRIEF OF APPELLEE/CROSS APPELLANT, JENNETTE S[.]" Other than the cover, Jennette prepared her brief as though she was an appellant, and while it does not conform to § 2-109(D)(4) ("shall be set forth in a separate division of the brief" entitled "Brief on Cross-Appeal"), it is prepared consistent with § 2-109(D)(1) (requirements for brief of appellant). Given Jennette's failure to fully comply with § 2-109(D)(4), we must determine whether her brief sufficiently complies with our appellate court rules in order for this court to consider her assigned errors or, alternatively, whether we should limit our examination of the record for plain error only or provide no review at all. See, e.g., *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014) (holding that where brief of party fails to comply with mandate of § 2-109(D), appellate court may proceed as though party failed to file brief or, alternatively, may examine proceedings for plain error). We conclude that Jennette's brief has complied with the rules for an appellant's brief which seeks affirmative relief, and the cover of her brief states she is a "CROSS APPELLANT," thus notifying this court from the outset that she is seeking affirmative relief. Her notification that affirmative relief is being sought is critical to our decision, as we discuss next.

Recently, in *In re Interest of Becka P. et al., ante* p. 489, 933 N.W.2d 873 (2019), this court considered the arguments of an appellee and cross-appellant, despite the lack of full compliance with § 2-109(D)(4). In *In re Interest of Becka P. et al.*, the juvenile court terminated the parental rights of both parents. The father filed the only notice of appeal and was thus the appellant. This court noted that all other parties became appellees and could file a cross-appeal. The mother filed a "'Brief of Appellee on Cross Appeal,'" but otherwise, prepared her brief in the form of an appellant's brief and did not separately respond to the father's appellant's brief other than to accept his statement of the basis of jurisdiction and statement of the case. *In re Interest of Becka P. et al., ante* at 511,

- 854 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

933 N.W.2d at 889. This court stated: "Although [the mother's] brief violates the portion of the rule requiring a separate section for a cross-appeal, because the form and presentation of her assignments of error conform with the rules applicable to an appellant's brief, we may consider the arguments raised in her brief." *Id*. at 513, 933 N.W.2d at 890. In support, this court cited to *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994) (appellee designated himself on cover of brief as appellant rather than as appellee/cross-appellant), and *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990) (appellees designated themselves on cover of briefs as appellants rather than as appellees and cross-appellants).

In *Knaub v. Knaub, supra*, an ex-husband sought to modify child support and alimony; the district court dismissed his action and assessed attorney fees against the ex-husband and his attorney based on the action being frivolous. The attorney filed the first notice of appeal in his own behalf (challenging sanctions), followed by the ex-husband filing a notice of appeal. The Nebraska Supreme Court pointed out that the attorney became the appellant and that the ex-husband was thus an appellee. The Supreme Court observed that the ex-husband

> failed to designate his brief as a cross-appeal and failed to set forth a separate section within his brief titled "Brief on Cross-Appeal." Although this violates our rule regarding the presentation of a cross-appeal, the form and presentation of [the ex-husband's] assignments of error conform with the rules applicable to an appellant's brief.

*Id*. at 175-76, 512 N.W.2d at 127. The Supreme Court proceeded to consider the ex-husband's arguments raised in his brief.

In *In re Interest of Becka P. et al., supra*, this court also distinguished *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999), and *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013); both cases involved juvenile court proceedings from which each parent appealed

- 855 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

from a final order. In *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 144, 602 N.W.2d at 450, the father was the second parent to file a notice of appeal; he titled his brief as "'Brief of Appellee.'" The Supreme Court noted that the father was "not merely resisting the claims of the appellant," but was "seeking affirmative relief." *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 144, 602 N.W.2d at 450. The Supreme Court cited to several cases for the proposition that a cross-appeal must be properly designated if affirmative relief is to be obtained, but also cited to *Knaub v. Knaub, supra*, and *In re Application A-16642, supra*, as cases where it had considered assigned errors even though the appellee or cross-appellant had "mistakenly" designated themselves as appellants. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 145, 602 N.W.2d at 450. The Supreme Court stated that the factor distinguishing *Knaub v. Knaub, supra*, and *In re Application A-16642, supra*, from the case before it was that in those two cases "a party who was an appellee and should have cross-appealed mistakenly designated itself as an appellant, rather than as a cross-appellant," whereas in the case before it, "the party that should have cross-appealed designated itself as an appellee, yet still sought affirmative relief." *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 146, 602 N.W.2d at 451. The court went on to state:

> In short, *the appellate courts of this state have always refused to consider a prayer for affirmative relief where such a claim is raised in a brief designated as that of an appellee.* We have, in the past, decided to entertain a procedurally defective cross-appeal only where such cross-appeal has been mistakenly asserted as an appellant's brief. Even this is a matter left solely to the discretion of the courts and does not imply a willingness to consider such defective appeals in the future.
>
> Parties wishing to secure appellate review of their claims for relief must be aware of, and abide by, the rules of this court and the Court of Appeals in presenting such

- 856 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

claims. Any party who fails to properly identify and present its claim does so at its peril. See *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998). [The father] has not complied with the rules of this court in the instant case, and we decline to waive those rules on his behalf.

*In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 146-47, 602 N.W.2d at 451 (emphasis supplied).

In *In re Interest of Chloe P.*, 21 Neb. App. at 470, 840 N.W.2d at 560, the father was the second to file a notice of appeal and he titled his brief as "'Brief of Appellee.'" Although the father assigned errors and sought affirmative relief, he did not designate a cross-appeal on the cover of his brief, nor did he set forth a separate division of the brief designated as a cross-appeal. Relying on *In re Interest of Natasha H. & Sierra H., supra*, this court declined to waive the rules and address the father's assigned errors (noting, however, that the father's assigned error challenging the juvenile court's adjudication order was addressed in the section responding to the mother's assigned error on the same issue).

The key distinction in the above-cited cases is whether the cover and content of the brief puts an appellate court on notice that a party is seeking affirmative relief, whether identifying as an appellant or a cross-appellant. Designation only as an appellee does not provide such notification. Further, if an appellee and cross-appellant's position aligns with the appellant's position, as is often the case in juvenile court adjudications and parental termination cases, there is usually no reason to separately respond as an appellee. Thus, if the cover of a brief is sufficiently labeled to put the appellate court on notice that affirmative relief is being sought, the absence of a separately divided section in the brief designated "Brief on Cross-Appeal" may not necessarily preclude full review so long as there is compliance with the rules pertinent to the content of an appellant's brief. See § 2-109(D). However, if an appellee and cross-appellant does respond to an appellant's assigned errors, a separately divided section titled "Brief on Cross-Appeal"

- 857 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

would be necessary. We caution, however, that while an appellate court may decide to waive strict adherence to the briefing rules under such circumstances, it is not required to do so. As indicated earlier, a party who fails to comply with the appellate court rules does so at his or her peril. See *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). Depending on the particulars of each case, failure to comply with the mandate of § 2-109(D) may result in an appellate court proceeding as though the party failed to file a brief or, alternatively, proceeding on a plain error review only. See *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

[9] In the present matter, Jennette, like the mother in *In re Interest of Becka P. et al., ante* p. 489, 933 N.W.2d 873 (2019), noted her desire to cross-appeal from the juvenile court's decision by her designation as "CROSS APPELLANT" on the cover of her brief. Jennette also properly assigned errors and raised her arguments on appeal in a manner consistent with the requirements for an appellant's brief as provided in § 2-109(D)(1). As in *In re Interest of Becka P. et al.*, Jennette did not include a separately divided section titled "Brief on Cross-Appeal" because she did not respond to the arguments raised by the appellant as would typically be seen in an appellee's brief. Accordingly, we conclude Jennette sufficiently put this court on notice that she was seeking affirmative relief by designating herself as a cross-appellant on the cover of her brief and preparing it in compliance with § 2-109(D)(1); we therefore waive the requirement that the cross-appeal be set forth in a separate section of the brief when no appellee's brief responding to the appellant's arguments is filed. An appellate court may consider a party's cross-appeal, even though the party's brief violated § 2-109(D)(4) requiring a separate section for a cross-appeal, where the form and presentation of the assignments of error in the party's brief conformed with § 2-109(D)(1), which applies to an appellant's brief.

We now consider the errors assigned in Jennette's brief.

- 858 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

(a) Statutory Factors

Jennette asserts that the juvenile court erred in finding that termination of her parental rights was warranted pursuant to § 43-292(2) or (6). Contrary to Jennette's assertions, upon our de novo review of the record, we find that the State presented clear and convincing evidence to prove that termination of Jennette's parental rights to her three children was warranted pursuant to § 43-292(2). As in our analysis of Steven's challenge to the statutory factors to support termination of his parental rights, we find that the evidence presented at the hearing revealed that Jennette had failed to provide her children with necessary parental care and protection for a significant period of time. She had also failed to put herself in a position to achieve reunification after her children were removed from her care.

During the 10 months the children were placed outside of Jennette's care, she failed to adequately renovate her home. By the time of the termination hearing, the home remained unsafe, unsanitary, and inappropriate for the children. There was evidence that Jennette had made efforts to fix the problems with the home, and at one point, she was even setting aside money in her budget to make renovations. However, Jennette's efforts in this regard seemed to taper off during the summer of 2018, when Jennette voluntarily terminated her employment for an unknown reason. Without a steady stream of income, it was unclear how Jennette planned to maintain and renovate the home so that it could be made appropriate for the children.

Additionally, there was evidence presented at the hearing that Jennette's boyfriend was either living with her at her home or was present at the home often. There was also evidence that the children did not like Jennette's boyfriend and that the boyfriend had been "aggressive" toward Steven Jr. Jennette's choice to continue to have her boyfriend in her life and in her home despite the objections of both her children and the Department was concerning, especially in light of

- 859 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

Stermensky's belief that Jennette may allow individuals to be a part of her and her children's lives, even when that would not be in the children's best interests.

Also during the 10 months prior to the filing of the motion to terminate her parental rights, Jennette failed to demonstrate compliance with any sort of mental health treatment plan. She indicated to Stermensky that she was unwilling to take necessary medications. She also failed to prove that she was attending individual therapy. Stermensky indicated that medication compliance and therapy could improve Jennette's ability to effectively parent her children. Her failure to take advantage of the treatment available to her demonstrated an unwillingness to make improvements in her own life for the sake of her children.

Perhaps because of her ongoing mental health problems, Jennette had demonstrated a long-term inability to care for her children's basic needs, including their medical care. Both Steven Jr. and Aodhan suffered from significant physical ailments while in Jennette's custody, and the Department became involved with the family multiple times as a result of Jennette's failure to obtain necessary medical care and failure to keep the children clean and safe. Despite the years of assistance provided to Jennette by the Department, she failed to demonstrate any sustained improvement in either her parenting skills or her ability to maintain a sanitary and safe home environment. Moreover, evidence presented at the hearing revealed that Jennette had previously had her parental rights to two older children terminated as a result of her neglect of their needs.

During the pendency of the current court proceedings, Jennette attended visitation with the children on a regular basis. However, as was the case with Steven, Jennette did not always act appropriately during the visits. She routinely discussed inappropriate topics with the children. She was often unable to control the children's behaviors and provided inconsistent discipline. She did not give the children her full

- 860 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

attention, even during the limited opportunities she had to see them.

As the termination hearing approached, Jennette stopped cooperating with the Department and its attempts to assist her. Jennette lied to her caseworker about quitting her job. Jennette pretended to be employed for months after she left her job. Jennette also stopped letting the caseworker visit her home. In both January and February 2018, Jennette was jailed on charges of child abuse.

In our review of the record, we find sufficient evidence to demonstrate that Jennette made very little progress toward reunification with her children from the time of their removal in October 2017 to the time the State filed its motion to terminate her parental rights in July 2018. Jennette had demonstrated an inability to provide the children with safety and stability. She could not provide them with safe and appropriate housing. She was not employed. She had chosen to live with someone who did not have a positive relationship with the children. Moreover, despite the numerous services offered to Jennette by the Department, both during the current proceedings and over the last decade, Jennette had demonstrated an unwillingness to take the necessary steps to improve her parenting abilities.

Upon our de novo review of the record, we agree with the juvenile court's finding that the State presented sufficient evidence to demonstrate that Jennette had substantially and continuously or repeatedly neglected and refused to give Steven Jr., Genevive, and Aodhan necessary parental care and protection pursuant to § 43-292(2). As such, we turn to our analysis of whether termination of Jennette's parental rights was in the children's best interests.

(b) Best Interests

In her brief on appeal, Jennette argues that the juvenile court erred in finding that termination of her parental rights was in the children's best interests. She asserts that she has a strong

- 861 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

bond with the children and that "she has made improvements in her parenting skills that can be used to provide for the needs of her children." Brief for appellee on cross-appeal at 14. Upon our review, we affirm the decision of the juvenile court that termination of Jennette's parental rights was in the children's best interests.

Jennette did present evidence which demonstrated that she made attempts to be involved in her children's education and that the children appeared content with Jennette. However, the overwhelming evidence presented at the hearing revealed that Jennette's continued relationship with the children was detrimental to their well-being. As we discussed in our analysis of Steven's appeal, the children had significant behavioral issues when they were removed from Jennette's care. During the children's time in foster care, their behaviors improved somewhat. Despite this improvement, the children regressed dramatically after visits with their parents. Genevive, in particular, appeared to react very negatively to seeing Jennette. Genevive would have nightmares after visits. In these nightmares, Jennette would appear as a "monster" or would be "shooting people." By the time of the termination hearing, Jennette was seeing her children for a brief period of time every other weekend. Such limited contact with the children and with such negative behaviors occurring after that contact was not indicative of a strong bond between Jennette and the children.

Despite Jennette's contentions in her brief on appeal, the evidence presented at the hearing did not reveal that she had made progress toward becoming an appropriate and effective parent. Jennette did obtain employment during the court proceedings. However, by the time of the hearing, she had voluntarily terminated this employment. Jennette had made some improvements on her home, but not enough improvements to make it a safe or sanitary living environment. Jennette failed to follow the recommendations of Stermensky and did not address her mental health problems. She was jailed twice on

- 862 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

charges of child abuse. She chose to continue a relationship with a man who did not get along with her children. Taken together, the evidence presented revealed that Jennette's circumstances had remained virtually unchanged since the initiation of the court proceedings.

At the termination hearing, Wiebesiek testified that Jennette had made poor progress since the removal of her children. Wiebesiek explained that Jennette had made no improvements in parenting skills and failed to follow through with the tenets of the court-ordered case plan. Wiebesiek opined that termination of Jennette's parental rights was in the children's best interests.

Based upon our review of the evidence, we agree with Wiebesiek's opinion that termination of Jennette's parental rights was in all three children's best interests. The children should no longer have to wait for Jennette to put them ahead of her own needs and wants. Jennette is currently not a fit parent, and given her lengthy history of involvement with the Department, it appears that she will not become a fit and capable parent any time in the near future. We affirm the decision of the juvenile court which found that termination of Jennette's parental rights was in Steven Jr.'s Genevive's, and Aodhan's best interests.

## VI. CONCLUSION

We conclude that the State proved statutory grounds for termination of Steven's and Jennette's parental rights to Steven Jr., Genevive, and Aodhan and proved that termination is in the children's best interests. As such, we affirm the decision of the juvenile court.

AFFIRMED.

ARTERBURN, Judge, concurring.

I agree with the analysis in the court's opinion as to Steven's appeal. I also agree that the evidence presented at the termination hearing was sufficient to support the county court's

- 863 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

determination that Jennette's parental rights should be terminated. However, I disagree with the manner in which the majority herein has reached its decision. I take this position based on my reading of the case law relating to the issue of compliance with Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), case law that should, in my opinion, be reexamined.

The decision to terminate a mother's or father's parental rights is among the most serious and difficult decisions a court is called upon to make. Unfortunately, the appellate courts of this state have frequently been asked to weigh whether a person's fundamental right to parent their child should be affected by procedurally deficient briefs filed on behalf of that parent. This scenario frequently occurs when the second parent to seek appellate review of a trial court's decision to terminate parental rights fails to follow the requirements of § 2-109(D)(4). In cases decided by this court in 2018, and thus far in 2019, there have been at least six occasions where the second parent to file a notice of appeal and/or brief did not follow the requirements of the rule.

Before proceeding, I must make mention of appellate counsel's obligation to be conversant with the Nebraska Court Rules of Appellate Practice. Our Supreme Court has warned parties that those who fail to abide by these court rules do so at their own peril. Despite this warning, this issue continues to arise repeatedly in termination of parental rights cases.

Part of the confusion may lie in the fact that in most termination cases, the interests of the father and mother are not adverse. As a result, the second parent to appeal in essence has no response or argument with the appellant's contentions, so there is no obvious need to write a responsive brief. That parent is more akin to an appellant than an appellee. Interestingly, Neb. Rev. Stat. § 25-1913 (Reissue 2016) provides that the party asking for reversal, vacation, or modification of a final order is to be designated as appellant, and the adverse party is to be designated as appellee. In termination cases, the term "appellant" more correctly describes the second

- 864 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

parent to either file their notice of appeal or their brief. That person is clearly seeking reversal of the trial court's order, and typically, the only parties that are adverse to their interests are the State and/or the guardian ad litem. Even given this potential confusion, however, there is ample case law warning of the consequences of failing to follow the rules of appellate practice.

Section 2-109(D)(4) provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

Our Supreme Court addressed this issue in *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). In that case, the parental rights of both parents were terminated by the trial court. The father's notice of appeal was filed after the mother's notice of appeal. His brief was titled as "'Brief of Appellee.'" *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 144, 602 N.W.2d at 450. The court noted that the father was indeed an appellee as provided by § 25-1913. However, since the father was seeking affirmative relief, he was required to follow the dictates of the court rule. The court stated, "The appellate courts of this state have repeatedly indicated that a cross-appeal must be properly designated, pursuant to rule 9D(4) [now § 2-109(D)(4)], if affirmative relief is to be obtained." *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 145, 602 N.W.2d at 450. Since no cross-appeal was properly designated, the court refused to consider the father's claim for relief. The court acknowledged that cases had arisen where the court did entertain procedurally defective cross-appeals where those cross-appeals had been mistakenly asserted as an appellant's brief, but noted that this matter is left solely to the discretion of the courts and "does not imply a willingness to consider such defective appeals in the future."

- 865 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

*Id.* at 147, 602 N.W.2d at 451. See, also, *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990). The court concluded by stating: "Parties wishing to secure appellate review of their claims for relief must be aware of and abide by, the rules of this court and the Court of Appeals in presenting such claims." *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 147, 602 N.W.2d at 451. The court then declined to waive the rules on the father's behalf.

This court considered a similar case in *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013). In *In re Interest of Chloe P.*, after the father filed his notice of appeal, the appellate clerk notified him that his notice would be treated as a second notice of appeal and referred him to Neb. Ct. R. App. P. § 2-101(C) (rev. 2015). The father correctly designated himself as an appellee, but failed to follow the instructions of § 2-101(C) which direct an appellee to follow the requirements set forth in § 2-109(D)(4). In that case, we held:

> Based upon our court rules, [the father], as an appellee, was required to identify his cross-appeal on the cover of his brief and in a separate section in compliance with § 2-109(D)(4). As in *In re Interest of Natasha H. & Sierra H., supra*, we decline to waive the rules on his behalf and to award him affirmative relief.

*In re Interest of Chloe P.*, 21 Neb. App. at 472, 840 N.W.2d at 561.

Most recently, this court addressed a case wherein the mother (who filed her brief after the father filed his notice of appeal) failed to comply with § 2-109(D)(4). *In re Interest of Becka P. et al., ante* p. 489, 933 N.W.2d 873 (2019). The mother properly designated herself as an appellee. On the cover of her brief, she wrote "'Brief of Appellee on Cross Appeal.'" *In re Interest of Becka P. et al., ante* at 511, 933 N.W.2d at 889. However, she did not set forth her cross-appeal in a separate section of the brief. Rather, her brief was written simply as if she was an appellant. The court distinguished the

- 866 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

case from *In re Interest of Chloe P., supra*, and *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999), finding that even though there was not a separate section for the cross-appeal, as is required by § 2-109(D)(4), "because the form and presentation of her assignments of error conform with the rules applicable to an appellant's brief, we may consider the arguments raised in her brief." *In re Interest of Becka P. et al., ante* at 513, 933 N.W.2d at 890 (citing *Knaub v. Knaub, supra*, and *In re Application A-16642, supra*). Though this appears to be at least a partial waiver of the rule, the court did not utilize any language of waiver.

The majority opinion of the court in this case follows the precedent set in *In re Interest of Becka P. et al., supra*. Here, the cover of Jennette's brief designates her as an appellee and a cross-appellant and designates the brief as "Brief of Appellee/Cross Appellant." As such, this case is essentially on all fours with *In re Interest of Becka P. et al.*, and according to that precedent, Jennette's assignments of error should be addressed on the merits. While I agree that Jennette deserves to have a full analysis of her case on the merits, I believe that the precedent set in *In re Interest of Becka P. et al.* may run afoul of the holding in *In re Interest of Natasha H. & Sierra H.*, and certainly departs from the holding in *In re Interest of Chloe P.*, which requires compliance with all aspects of § 2-109(D)(4).

The holding in *In re Interest of Becka P. et al., supra*, moves the line a bit farther toward easing compliance with our court rule without fully waiving the rule. Under *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013), we required that the cross-appeal be identified on the cover of the brief *and* that a separate section devoted to the cross-appeal as prescribed by the court rule be included. Under *In re Interest of Becka P. et al.*, the requirement of a separate section is no longer needed so long as the form of the brief and presentation of assignments of error conform to the rules of an appellant's brief under § 2-109(D)(1). The difficulty with this

- 867 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

finding (aside from its potential conflict with the holding in *In re Interest of Natasha H. & Sierra H.*) is that it simply trades one fine line for another.

As our case law stands now, if the second parent to file an appeal or brief were to designate himself or herself only as an appellee (or perhaps as an appellant), without designating the brief as a cross-appeal, we would find that that parent had run afoul of the rule and would not hear his or her case on the merits even if the brief otherwise fully complied with the rules applicable to an appellant's brief. At best, we may give them plain error review. See, e.g., *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014) (holding that where brief of party fails to comply with mandate of § 2-109(D), appellate court may proceed as though party failed to file brief or, alternatively, may examine proceedings for plain error); *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). However, if the second parent were to designate his or her brief as a cross-appeal on the cover, and present us with an otherwise identical brief, that parent would receive a full review. In other words, full review may depend on whether the word "cross" is found somewhere on the cover of the brief in conjunction with the words "appeal" or "appellant."

This fine line raises the question of whether § 2-109(D)(4) should be strictly applied at all to termination of parental rights cases. Should the decision of whether a father's or mother's right to parent his or her child potentially turn on whether one simple word appears on the cover of a brief? In the present case, the ultimate result would not change. Whether we review Jennette's claims on the merits, conduct a plain error analysis, or simply refuse to review the matter due to noncompliance with the rule, we would affirm the termination of Jennette's parental rights. That will not be true of every case, however.

For this reason, I cannot join in the final section of the opinion of the court regarding Jennette's cross-appeal. In my

- 868 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF STEVEN S. ET AL.
Cite as 27 Neb. App. 831

view, we have two paths that can be followed: (1) strictly follow prior case law and require full compliance with our court rule as was done in *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999), and as this court did in *In re Interest of Chloe P., supra*, or (2) simply exercise our discretion and waive the rule as is also authorized by *In re Interest of Natasha H. & Sierra H.* Given the fundamental nature of a person's right to parent their child, I favor the latter so long as the brief complies with the rules governing an appellant's brief. I do not believe that gradually cutting back on the enforcement of § 2-109(D)(4) as prescribed by *In re Interest of Becka P. et al., ante* p. 489, 933 N.W.2d 873 (2019), and followed herein, promotes clarity in the law or will result in a just result for all parents whose parental rights hang in the balance. In this case, Jennette's brief does meet the requirements of an appellant's brief under § 2-109(D)(1). She is seeking reversal of a final order. Her interests are not adverse to those of Steven. As defined by § 25-1913, she is an appellant. Considering these factors in conjunction with the fundamental right a person has to parent their children, I believe the better course would be to simply waive all of the requirements of § 2-109(D)(4) as the pertinent case law allows us to do.